**Reginold J. DORSEY, Plaintiff–Appellant,**

v.

**ST. JOSEPH COUNTY JAIL OFFICIALS a/k/a St. Joseph County, Joseph F. Nagy, David Stafford, et al., Defendants–Appellees.**

**No. 96–1407.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 2, 1996.

Decided Oct. 28, 1996.

Dave Welter, Jeffrey Terrill (argued), Valparaiso University Law Clinic, Valparaiso, IN, for Plaintiff–Appellant.

Larry Ambler (argued), Allen, Fedder, Herendeen & Kowals, South Bend, IN, for Defendants–Appellees.

Before POSNER, Chief Judge, BAUER and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Reginold J. Dorsey, while a pre-trial detainee at the St. Joseph County Jail in Indiana, was injured when four guards, defendants Deputy David Stafford, Deputy Robert Thompson, Captain Paul P. Moffa and Sergeant Greg Delinski, allegedly used excessive force while transferring Mr. Dor-

sey from one cell to another.[1] Mr. Dorsey filed this civil rights action. *See* 42 U.S.C. § 1983. The district court entered summary judgment in favor of defendants. Because we believe that there is a genuine issue of material fact with respect to the excessive force claim, we must reverse the judgment of the district court and remand the case for further proceedings.

### A.

The basic principles that must guide our decision are well-established. Summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). We review the district court's grant of summary judgment de novo, drawing all reasonable inferences from the record in the light most favorable to the non-moving party. *Loewen Group Int'l v. Haberichter,* 65 F.3d 1417, 1420 (7th Cir.1995); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ Because Mr. Dorsey was a pre-trial detainee, his excessive force allegations must be assessed within the context of the Due Process Clause. *See Graham v. Connor,* 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443 (1989) (holding that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment"); *Bell v. Wolfish,* 441 U.S. 520, 535–37, 99 S.Ct. 1861, 1871–72, 60 L.Ed.2d 447 (1979) (holding that the Due Process Clause permits the government to incarcerate pre-trial detainees, but does not permit punitive conditions); *Wilkins v. May,* 872 F.2d 190, 195 (7th Cir.1989) (noting that the "applicability of the due process clause to police brutality occurring after the suspect is formally charged has rarely been questioned"), *cert. denied,* 493 U.S. 1026, 110 S.Ct. 733, 107 L.Ed.2d 752 (1990).

### B.

■ A lengthy recitation of the background facts is not necessary to the resolution of the issue before us. We shall limit ourselves to a brief description of the record before the district court on the precise issue which we must decide.

At the time it ruled, the district court had before it the complaint, plaintiff's affidavit, plaintiff's sworn testimony at a pre-trial conference before a magistrate judge, answers to interrogatories filed by the four jail guards, the guards' incident reports and a note from several inmates asking that plaintiff be moved from their shared cell.[2]

Mr. Dorsey's affidavit states that "[w]ithout provocation, Officers Mofha [sic], Stafford, Thompson, and Sgt. Delinski maliciously and sadistically beat me until I fell to the floor. Officer Mofha [sic] hit and kicked me in the head several times until I became partially unconscious." In addition, at the pre-trial conference, plaintiff testified under oath that Captain Moffa told him, after he was handcuffed for the transfer, "You're the nigger that's causing trouble around here." The affidavit also states that after plaintiff "dropped to the ground and was kicked in the head, the guards picked me up and threw me into the 'K–Cell.'" He adds: "I laid in the 'K–Cell' in a pool of my own blood, semiconscious, for an unknown length of time." Plaintiff submitted to the district court medical records showing a head injury and a broken arm.

The evidentiary materials relied on by defendants tell a very different story. The incident reports include a handwritten note from other inmates of the jail warning that, if

---

1. The complaint included additional claims involving allegedly substandard medical treatment for Mr. Dorsey's diabetes, failure to protect Mr. Dorsey from harm caused by another inmate, and overcrowding and understaffing at the county jail. None of these claims is raised in this appeal.

2. Plaintiff also submitted a handwritten note signed by two inmates stating that they saw the guards beating plaintiff. That statement, however, is not sworn and thus is not of the evidentiary quality required for summary judgment proceedings.

plaintiff were not moved immediately, he would be harmed by the "Inmates of 2J," the cell area where plaintiff was housed. Captain Moffa's incident report states that, when the officers attempted to remove Mr. Dorsey, he refused to go to the "K–2 cell" because it did not have a television. The Captain also recounts that Mr. Dorsey "resisted the whole way," and had to be restrained and moved into the cell by Captain Moffa and Sergeant Delinski: "As I was backing out of the cell[,] Dorsey turned around and rushed at this officer, [and] tried to hit this officer with his right hand." Captain Moffa continues that he was able to block the hand so that Mr. Dorsey's fist hit Captain Moffa in the left arm and shoulder. "Dorsey then tried to grab this officer. He then was taken to the floor by this officer. He, Dorsey, struggle[d] with this officer and tried to hit me again. At this time I hit Dorsey on the left side of the head above the ear as his head was down."

In his answers to interrogatories, Captain Moffa also stated that Mr. Dorsey did not want to be moved to another cell. He told the officers that he could take care of himself against threats by other inmates, and that he wanted a cell with a television. While walking Mr. Dorsey to the new cell, Mr. Dorsey "put his shoes on (shoed upped). That is an indication that an inmate is going to fight." Captain Moffa believed that "Dorsey was looking to fight to save face." The officers did not warn Mr. Dorsey that they were going to use force to accomplish the cell transfer because such a warning "would jeopardize the safety of the officers," and because Mr. Dorsey had already "made threats and his stance and body language told us that he was looking to fight if given the chance." Captain Moffa described the struggle which occurred inside the new cell:

> Once I started to back out of the cell[,] Dorsey turned and came at me. He attempted to hit me with a closed [fist] on his right hand. I was also [able] to block the punch and take Dorsey to the floor but once on the floor Dorsey got one of his arms around my legs and the other, the left one, he was trying to pull me on to the floor. At that time, I hit Dorsey on the left side of the head.

The evidentiary materials submitted by the other three defendants are consistent with the statements made in Captain Moffa's affidavit and answers to interrogatories. We need not describe them in detail here.

When the summary judgment record is assessed as a whole, it is clear that Mr. Dorsey does not seriously dispute that defendants initiated a cell transfer because Mr. Dorsey's cellmates apparently thought he was a "snitch" and threatened to do him harm.[3] Nor does plaintiff dispute that he was not entirely happy with the transfer to a cell without a television.[4]

However, Mr. Dorsey's account differs substantially from that of the defendants on what happened midway through the transfer when he saw his new cell and began resisting the officers' efforts. His affidavit states that "[a]t no point did any guard give me any warning whatsoever before hitting me nor did I resist or provoke the guards." Similarly, he swears in his affidavit that the beating occurred "[w]ithout provocation." Mr. Dorsey describes the force allegedly employed against him with consistency and specificity. He does not merely "rehash the facts alleged in his complaint." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir.1993) (reversing, in part, the district court's grant of summary judgment). He is unequivocal in his description of the relevant events. The officers give just the opposite account. They maintain that Mr. Dorsey violently resisted and even intentionally attacked one of the guards, causing that guard's broken hand. The credibility dispute presented by these divergent accounts cannot, under the prevailing standards that we have recited at the

---

**3.** In his affidavit, Mr. Dorsey states that four "inmates in '2–J' sent a note to the guards requesting that I be moved or they would hurt me." At the pre-trial conference, plaintiff referred to his theory that the "beating took place" because he was "accused of being a snitch," and was "being persecuted" by the medical staff.

**4.** In his affidavit, he states: "The 'K–Cell' unit is a single-man unit stripped of all living accommodations."

beginning of this opinion, be decided on summary judgment.

### C.

Because the record reveals that material facts, critical to the excessive force claim, remain disputed, we hold that summary judgment was not appropriate at this stage of the proceedings. It may be that defendants can ultimately establish that the force used was reasonably necessary and not a violation of Mr. Dorsey's due process rights. We emphasize that we express no opinion on that question. At this point in the litigation, we must narrowly limit our review to the question of whether material factual issues exist as to the question of whether the force used was excessive.

### Conclusion

Accordingly, the judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED