**Ralphfield HUDSON, Plaintiff–Appellant,**

v.

**Irwin M. McHUGH, Director, Michael Lew Center, Mary Lafever, Michael Lew Center, and Howard Erickson, Rock County Sheriff, Defendants–Appellees.**

No. 97–1437.

United States Court of Appeals, Seventh Circuit.

Argued May 13, 1998.

Decided July 8, 1998.

---

Thomas L. Shriner, Jr., Michael Mishlove, Foley & Lardner, Milwaukee, WI, for Plaintiff–Appellant.

Andrew S. Caulum (argued), Knoll, Hart & Caulum, Madison, WI, for Defendants–Appellees McHugh and Lefever.

Thomas A. Schroeder (argued), Office of the Corporation Counsel, Janesville, WI, for Defendant–Appellee Erickson.

Before RIPPLE, KANNE and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

After being transferred from a halfway house to a county jail, Ralphfield Hudson went without Dilantin, his epilepsy medicine, for 11 days and suffered a seizure. Afterward he filed a pro se § 1983 suit, claiming that the halfway house administrators and several jail officials violated his rights under the Eighth Amendment. The district court, after entering several nonappealable orders, granted summary judgment for the defendants and Hudson appeals. We review the district court's summary judgment decision *de novo,* accepting as true all facts asserted by Mr. Hudson. Other orders are reviewed for an abuse of discretion.

In 1994 Hudson was serving the tail end of a federal prison sentence at the Michael Lew Center, a halfway house in Beloit, Wisconsin, run by Irwin McHugh (the director) and Mary Lafever (the assistant director). Both McHugh and Lafever knew of Hudson's epilepsy—in fact, they held onto his Dilantin, an anti-convulsive medication, measuring out daily doses to Hudson. Hudson's drug use, however, wasn't limited to Dilantin, and in the fall of 1994 he tested positive for cocaine, which earned him a trip to the Rock County jail, escorted by several United States marshals.

Hudson says that when he was leaving the Lew Center he asked McHugh if he could "bring anything with,"—in reference to his Dilantin—and, according to Hudson, McHugh responded "someone from [his] office would bring anything that was necessary." McHugh swears that this exchange never took place. In any event, the marshals took Hudson to the jail without his Dilantin—and nobody at the Center followed up by sending it to the jail until after he suffered a seizure.

During his initial intake interview at the jail, Hudson told several jail employees that he was an epileptic and that he needed Dilantin on a daily basis. The intake officers recorded this information in the jail's records—but he didn't get his medicine. Over the next few days Hudson continued to request his Dilantin, filling out several medical request forms. Still, no medicine was given to him. After a few more days passed he got to see a jail nurse, but even though he told her about his condition, she didn't take any steps to get him his medicine. After 11 days of having his requests ignored, Hudson suffered a grand mal epileptic seizure. Three days later, Lafever transported Hudson's anti-convulsive medication to the jail.

Hudson, while incarcerated at a federal correctional facility in Minnesota (his next stop after he left the jail), filed a pro se complaint and petition to proceed *in forma pauperis,* alleging that both Lew Center and jail personnel violated his Eighth Amend-

ment rights by not giving him his medication. The petition named McHugh, Lafever, Joseph Black (at the time the sheriff of Rock County—along the way, the new sheriff of Rock County, Howard Erickson, was substituted for Black), and the jail intake officers and jail nurse—the latter group, except for "the Nurse," being identified only by their first names because Hudson didn't know their full names at the time. The district court dismissed the claims against the defendants who were not fully identified, but Hudson was urged to find out their full names and amend his complaint to add them to the suit.

In September of 1996 Hudson learned the name of the jail nurse—Cris Siano—and moved to amend his complaint to add her as a defendant. However, his pro se motion didn't comply with the district court's procedural niceties—(1) it wasn't properly served, (2) it didn't follow the proper format (using the original complaint as a template and then shading discarded allegations and highlighting new ones), and (3) it contained legal argument. The court denied the motion to amend.

By the end of September Erickson, McHugh, and Lafever had filed motions for summary judgment. Hudson responded but his response was stricken because it wasn't in proper form. The judge gave Hudson more time to file a proper response and, in connection with that goal, she told him how to discover the names of the jail officers from the sheriff.

By the middle of November Hudson learned the names of the intake officers—Erin Briggs, James Kumlien, and an Officer Cokind—and a month later he again moved to amend his complaint to add these individuals (and the nurse) as defendants. The relevant part of his amended pleading stated:

> At the time of admittance at Rock County Jail the petitioner informed officer Erin Briggs and Intake officer James Kumlien of his illness and his need of daily medication. Also Officer Cokind # 8132 the Officer who signed Medical Intake report dated 10/17/94.... Several days after in-

forming said parties of medical needs petitioner unsuccessfully tried to receive his medication by submitting requests to see Medical staff. After several days of submitting requests petitioner finally was interviewed by Nurse Cris Siano. The petitioner informed the nurse Cris Siano of back problems and the need of medication for treatment for seizures.... After this interview petitioner never was seen by any other medical staff or treated for any of his medical needs.

Unfortunately for Hudson, despite having apparently cleared up the pleading deficiencies, the new complaint, in the view of the district court, suffered from the same problems as the earlier one-it contained a lot of legal argument and Hudson hadn't highlighted the new allegations (nor shaded the discarded ones)—and once again he was denied leave to amend. At the same time, the court also ruled that the amended complaint, even if considered, failed to state a claim because the allegations suggested only negligence, not the required indifference the cases say is deliberate under the Eighth Amendment.

After this setback Hudson filed his second response to the pending motion for summary judgment. As with the first response, the second was found to be procedurally deficient, but this time, apparently fed up with Hudson's gaffes, the district court struck it and, relying solely on the defendants' submissions, booting the complaint was ordered. Erickson was out because he had no personal connection to the events, and McHugh and Lafever, it was held, couldn't have violated Hudson's Eighth Amendment rights because they had no connection to the denial of medicine at the jail—they had no duty to provide the Dilantin and they didn't interfere with Hudson's ability to get it on his own. While Hudson's appeal was pending we appointed counsel for him. His appointed counsel, Attorney Michael Mishlove, has done an exemplary job on the case, and he now challenges the grant of summary judgment in favor of McHugh and Lafever and the denial of Hudson's motion to amend the complaint to add the jail officers.[1]

---

1. In a peripheral issue, Hudson appeals the dis-   trict court's refusal to request that an attorney

■ We can quickly resolve the appeal as to McHugh and Lafever. Hudson, we think, had a serious medical need. *See Gutierrez v. Peters*, 111 F.3d 1364, 1370–72 (7th Cir.1997). His unmedicated epileptic condition while at the jail posed a serious threat to his health. But to be actionable, Hudson must establish a deliberate indifference to his need. In the denial of medical treatment context, deliberate indifference culpability means two things: (1) a knowledge element satisfied by an official's actual knowledge of the serious medical need—more precisely, he "must be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference," *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994); and (2) a response element satisfied by reckless disregard for the known serious medical need, by inaction or woefully inadequate action. *Id.*

Hudson can't satisfy the knowledge element. The basic facts giving rise to the inference of Hudson's serious medical need are that he had epilepsy, needed Dilantin daily, and the jail personnel weren't giving it to him. While McHugh and Lafever clearly knew about Hudson's epilepsy and that he needed daily doses of Dilantin, there is no

evidence that they knew he was not getting medicine (his own or the government's) at the jail.[2] And no inference of knowledge can be drawn from the fact that Hudson was taken from the Lew Center without his medicine. Hudson wasn't sent to a gulag in Siberia—the Rock County jail had an intake process complete with questions about medical problems and it had the capacity to provide Hudson with medicine on its own. And Hudson wasn't incapable of expressing his need for Dilantin, so simply sending him to the jail, away from the Dilantin at the Center, didn't mean that he wouldn't get proper medication to control his condition. With no evidence that either McHugh or Lafever knew of Hudson's serious medical need when he was at the jail, no reasonable jury could find that they were deliberately indifferent to it. Summary judgment was properly granted in favor of Lafever and McHugh.[3]

The claim against the jail officers is a different story. Recall that the district court denied the motion to amend (on technical grounds) *and* found that the allegations didn't state a claim of deliberate indifference.

■ Hudson's proposed amended complaint alleged that the jail intake officers and

help him on his case. While there is no right to counsel in civil cases, where an indigent pro se litigant makes reasonable, but unsuccessful, efforts to obtain a lawyer, one should be requested where the litigant isn't competent to try the case by himself and the presence of counsel would make a difference in the outcome. *Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir.1993). The district court refused Hudson's first and second motions for counsel on the ground that he hadn't yet made reasonable efforts to obtain a private attorney. *See Jackson v. County of McLean*, 953 F.2d 1070, 1072–73 (7th Cir.1992). Hudson moved for reconsideration and, in an order dated November 15, 1996, the judge found that he had passed the reasonable efforts threshold but that his case wasn't too complex—it concerned only a single event and the applicable law was straightforward—and he was therefore competent to prosecute it himself. Hudson asks us to reverse that ruling, which we review only for abuse of that discretion, *id.*, arguing that his incompetence was clearly demonstrated by, as his counsel now puts it, his "procedural guffaws." Keeping in mind that this case, while not exceedingly complex, still presents tricky issues of state of mind and medical causation, when the motion was decided (November 15, 1996) Hudson's pro-

cedural gaffes hadn't yet reached their high point, and he likely appeared as competent as any average pro se litigant. Because we evaluate the reasonableness of the district court's decision as of the time it was made, *id.*, we can't say the district judge abused her discretion in declining to request that an attorney take the case.

**2.** The disputed conversation between Hudson and McHugh before Hudson was taken to the jail—ignored by the judge when she struck Hudson's response—doesn't change anything. It gives McHugh knowledge that Hudson wanted his medicine, not that the jail wasn't giving it to him.

**3.** Even if McHugh or Lafever knew Hudson was going without Dilantin, that wouldn't be the end of our inquiry. Hudson was no longer in custody at the Lew Center, so even if McHugh or Lafever knew of his serious medical need, Hudson would have to prove that their duty to provide medical care, as discussed in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), continued after their physical custody of him ceased. Because we conclude that there is no evidence of knowledge, we need not deal with this issue.

nurse (1) knew about his epilepsy—because he told them during the intake interview and throughout the days before his seizure—(2) knew that he wasn't getting Dilantin-again, because he told them—and (3) still did nothing about it in the face of his repeated requests. While the district court found that this only stated a claim of negligence, we disagree; this is the prototypical case of deliberate indifference, an inmate with a potentially serious problem repeatedly requesting medical aid, receiving none, and then suffering a serious injury. *See Antonelli v. Sheahan,* 81 F.3d 1422, 1432 (7th Cir.1996). Unlike the folks at the Lew Center, the officers at the jail knew the basic facts giving rise to the inference that he had a serious medical need—they knew he had epilepsy, they knew he didn't have his medicine and they knew he wasn't getting it—and with knowledge of these basic facts pleaded, drawing the inference of a serious medical need is a question of fact. *Farmer,* 114 S.Ct. at 1981–82. And, also according to the allegation, they did nothing about it, thus satisfying the response element. Hudson has stated facts which are sufficient to present an Eighth Amendment claim.

 So the complaint states a claim, but the district court denied leave to amend—a discretionary decision, reviewed, of course, for abuse of discretion. However, refusal to grant a pro se plaintiff leave to amend and add the names of the appropriate individual officer defendants, is "widely recognized as an abuse of discretion." *Donald v. Cook County Sheriff's Dept.,* 95 F.3d 548, 556–57 (7th Cir.1996). Because a denial of a properly filed motion to amend would be an abuse of discretion, the only question left for us is whether Hudson's *improperly* filed papers keep him out of court. Our guiding principle is, again, the well-known admonition that district courts must construe pro se pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652. The essence of liberal construction is to give a pro se plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable. Here, Hudson's amended complaint clearly names the jail officers he thinks are responsible and it alleges that they deprived him of his medicine.

Its only deficiencies were technicalities—he failed to shade and redline certain allegations—and the inclusion of legal argument, which could have been stricken. Because these technical defects didn't prevent the district court from understanding Hudson's amendment, we think the district judge abused her discretion in refusing to grant leave to amend.

With that said, we send Hudson back to the district court armed with a claim against the jail officers and the nurse. Hopefully he will also have Attorney Mishlove at his side to press his case. The judgment of the district court is, accordingly, AFFIRMED in part and REVERSED in part, and the case is remanded for further proceedings.