165 F.3d 31
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Conroy D. COZART, Plaintiff-Appellant,
v.
Jerome MITCHELL, F.A. Craig, G.E. Castrovilla, M.D., et al.,
Defendants-Appellees.
 No. 97-3513.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 20, 1998*.
Decided Nov. 27, 1998.
 
 Appeal from the United States District Court for the Central District of Illinois. No. 95-CV-1243. Joe B. McDade, Judge.
 Before Hon. KENNETH F. RIPPLE, Hon. DANIEL A. MANION, Hon. MICHAEL S. KANNE, Circuit Judges.
 
 ORDER
 
 1
 Conroy Cozart, an Illinois state prisoner, appeals the district court's grant of summary judgment in favor of three health care providers who treated him while he was incarcerated at the Pontiac Correctional Center. Cozart brought his suit under 42 U.S.C. § 1983, alleging that the defendants' treatment evidenced deliberate indifference to his medical needs, and thus violated the Eighth Amendment. On appeal, Cozart argues that the trial judge erred in granting summary judgment in light of disputed material facts--namely, whether the health care providers' medical mistreatment of symptoms which began after the extraction of his teeth was a result of the defendants' deliberate indifference to his serious medical needs. We affirm.
 
 
 2
 On November 10, 1994, when Cozart entered the Joliet correctional facility, prison doctors performed a thorough physical examination of him. That examination revealed no medical problems or disabilities. On November 22, 1994, however, Cozart visited a prison dentist--Dr. Howard--complaining of a toothache. The visit revealed that Cozart had an infected and abscessed tooth. Howard therefore prescribed penicillin and Motrin and advised against extracting the teeth immediately because he thought that extraction would result in medical complications.
 
 
 3
 On November 23, 1994, Cozart was transferred from Joliet to the Pontiac facility. When a physical examination performed during Cozart's admission to Pontiac revealed the infected tooth and abscess, Cozart was scheduled to see Dr. Jerome Mitchell, a staff dentist at Pontiac. On December 2, 1994, Mitchell extracted two molars from the infected, abscessed area. When Cozart asked Mitchell why both teeth were being extracted in the same visit, Mitchell stated that it was more convenient for him to do so. After the extraction, Mitchell prescribed penicillin and Motrin to ease the post-extraction discomfort. Cozart alleged that from that night, he could not sleep due to intense pain. Besides a lack of sleep, Cozart also experienced progressive numbness in the right side of his mouth, a constant headache, and increasing difficulty opening his mouth.
 
 
 4
 Subsequently, Cozart visited Mitchell several times in an attempt to alleviate his pain. During one such visit, on December 29, 1994, Mitchell observed that the area around the extraction was swollen and pus-filled and that Cozart had a "lip ulcer with crusting." Mitchell joked that perhaps Cozart had herpes. He prescribed an antibiotic, but refused to prescribe a stronger pain reliever. On January 11, 1995, defendant Dr. F.A. Craig--an oral surgeon contractually employed by the prison--examined Cozart. Craig could not determine the cause of Cozart's many symptoms. He noted that the extraction site was healing well, but that there was swelling around Cozart's right eye. He prescribed an antibiotic and a stronger pain reliever. On January 25, 1995, Cozart returned to see Mitchell. When he saw Cozart, Mitchell threw up his hands and said, "Man. I'm tired of seeing you." He then turned his back on Cozart and another dentist examined him.
 
 
 5
 In February, Cozart's right eye swelled to twice its normal size, his vision became sensitive to light and blurred so much that he needed assistance to walk. The intense pain also continued. Between January 25, 1995 and March 12, 1995, because of a prison lockdown and the rescheduling of an appointment, Cozart was not examined by a physician. Subsequently, a March 12, 1995 examination by Dr. Smith indicated nerve damage and other medical problems. Smith prescribed eye solution and pain medication, and recommended that Mitchell and a neurologist examine Cozart.
 
 
 6
 On March 13, 1995, Mitchell examined Cozart. Mitchell told Cozart that his symptoms were likely due to a "not serious", low-grade infection, and that he believed that Cozart's problems were psychological. On March 20, 1995, Mitchell confirmed to Cozart that he was scheduled to see a neurologist, but said that security concerns prevented him from telling Cozart when the appointment would occur. On April 12, 1995, Cozart returned to Craig, who found no indications of post-operative problems arising from the extractions of the teeth back in December. Craig refused to aid Cozart to expedite his visit to the neurologist.
 
 
 7
 On April 21, 1995, Dr. G.E. Castrovillo[1], a staff physician at Pontiac, treated Cozart for the first time by prescribing pain medication. On April 26, 1998, Cozart was sent to St. Joseph Medical Center in Bloomington, Illinois for "further specialized consultation." There, a neurologist--Dr. Dick--noted that although Cozart was "healthy appearing" and "in no acute distress," he had a "mass" in his right maxillary sinus and orbital area. Dr. Dick's examination revealed that this mass (of uncertain origin) caused Cozart's right eye to droop, his right eyeball to bulge, and his face to become numb. On April 28, 1995, Dr. Thomas C. Ocheltree, an ear/nose/throat specialist, surgically removed the mass. Analysis of the infected tissue revealed that it was not tumorous or cancerous.
 
 
 8
 Although his condition immediately improved after the surgery, Cozart sustained permanent physical injury from the delayed proper treatment of his ailments. His vision is damaged, bone is destroyed in the right bridge of his nose and the upper cheek area of the right side of his face, his hearing is damaged to the point where he must now use a hearing aid, and his sinuses are aggravated by bleeding, congestion, and permanent swelling. Further, he alleges that he bears "continual mental trauma, psychological scars and injuries."
 
 
 9
 We review challenges to a grant of summary judgment de novo. Janiuk v. TCG/Trump Co., 157 F.3d 504, 507 (7th Cir.1998). Summary judgment is proper when the trial record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We examine the facts in the light most favorable to Cozart, the non-movant. Oates v. Discovery Zone, 116 F.3d 1161, 1165 (7th Cir.1997).
 
 
 10
 To succeed on an Eighth Amendment claim, a plaintiff must establish that: 1) his claimed deprivation is "objectively, sufficiently serious"; and 2) it was caused by a prison official's act or omission, committed with a "sufficiently culpable state of mind amounting to a deliberate indifference to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In the denial of medical treatment context, deliberate indifference means two things: (1) actual knowledge of serious medical need, and (2) "reckless disregard for the known serious medical need, by inaction or woefully inadequate action." Hudson v. McHugh, 148 F.3d 859, 863 (7th Cir.1998).
 
 
 11
 In the present case, the medical records provided by Cozart indicate that the defendants and other personnel acted to alleviate Cozart's pain and to determine the cause of his medical problems. His medical records document his many visits to the defendants, other prison doctors, dentists, nurses, and external specialists. Although it took almost five months for the defendants to refer Cozart to a neurologist, who was finally able to determine the cause his ailments, in the meantime he was being treated by the defendants. The record also reveals that the defendants responded to Cozart's medical needs; they did not deny him medical care, nor did they intentionally mistreat him or deliberately act to cause him harm. They examined him at least fifteen times over approximately five months. During his appointments, the doctors prescribed analgesics and antibiotics, and they documented each visit in Cozart's medical record. Ultimately, they referred Cozart to specialists and to a hospital where he underwent a battery of tests as well as the surgery to remove the mass. This hardly constitutes indifference to Cozart's medical needs.
 
 
 12
 We also note that even if Cozart were subjected to undue delay in diagnosing his ailment, physician negligence in diagnosing or treating a medical condition does not constitute unconstitutional medical mistreatment. Furthermore, even if the doctors committed malpractice, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." See Estelle v.. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Steele v. Choi, 82 F.3d 175, 178 (7th Cir.1996). While we are sympathetic to Cozart's medical condition, because the record does not indicate that the defendants recklessly disregarded Cozart's medical needs, his claim fails as a matter of law. See Hill v. Shobe, 93 F.3d 418, 421 (7th Cir.1996).
 
 
 13
 Accordingly, the judgment of the district court is
 
 
 14
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f)
 
 
 [1]
 The district and circuit court docket sheets as well as the plaintiff's filings misspell Dr. Castrovillo's name as "Castrovilla ." The mistake is also perpetuated by the defendants in some of their filings with the district court. Although the record contains no motion by the defendants to correct the spelling of Castrovillo's name, we use the spelling Dr. Castrovillo uses in his signature on his affidavit (appended to defendant's motion for summary judgment)