Orrin S. REED, Plaintiff–Appellant,

v.

Daniel McBRIDE, et al., Defendants–Appellees.

No. 97–4161.

United States Court of Appeals,
Seventh Circuit.

Argued April 2, 1999.

Decided May 10, 1999.

Blake J. Burgan (argued), Barnes & Thornburg, Indianapolis, IN, for Plaintiff–Appellant.

James A. Garrard (argued), Office of the Attorney General, Indianapolis, IN, for Defendants–Appellees.

Before POSNER, Chief Judge, FLAUM and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Before us is Orrin S. Reed's appeal from the district court's grant of summary judgment to the defendants on his § 1983 suit. Reed alleges that the defendants violated the Eighth Amendment by subjecting him to cruel and unusual punishment by withholding food and life-sustaining medication while he was incarcerated. For the rea-

sons set forth below, we reverse the district court's judgment, and remand for trial.

## Facts

Reed is an inmate at Westville Correctional Facility in Westville, Indiana ("Westville"). He suffers from a panoply of ailments, including paralysis, heart disease, Hunt's syndrome,[1] high blood pressure, rheumatoid arthritis, and other crippling diseases of the legs, ankles, feet, hands and spine.

Reed attests that on "many" occasions, the defendants denied him doctor-prescribed life sustaining medication and food for three to five days at a time to punish or harm him. The defendants are Daniel McBride, Westville's superintendent, and H. Christian DeBruyn and Bruce Lemmon, the Commissioner and Regional Director of the Indiana Department of Correction respectively.

Reed complains that "every Friday" for an unspecified period of time, when he returned from treatment at Wishard Memorial Hospital, he was unable to retrieve his identification badge until the following Monday or Tuesday. Without this badge, he was not permitted to receive food or medication from prison authorities. The plaintiff avers that these privations caused him to suffer severe illness and permanent injuries, including agonizing and extreme pain, internal bleeding, violent intestinal cramps, and unconsciousness. Reed claims that the defendants were made aware of these deprivations through letters he sent to them, but that they refused to take appropriate actions to stop these practices. Although neither side addresses this issue in their briefs, the only reason that these defendants may be held liable is because Reed's complaints

---

1. Hunt's Syndrome, also known as Ramsay Hunt's Syndrome, is "an uncommon form of shingles ... that affects facial and auditory nerves. This may lead to facial paralysis and ringing of the ears, hearing disorders and dizziness. Blisters may occur on the external ear and eardrum during the acute phase." *Ask The Mayo Physician*, www.mayohealth.org/mayo/askphys/qcurr2_6.htm, (April 9, 1999).

were directly addressed to and received by them. *Vance v. Peters,* 97 F.3d 987, 992–93 (7th Cir.1996) (liability attaches when supervisor knows about conduct and "approves it, condones it or turns a blind eye.") (citation omitted). These defendants were not personally responsible for the plaintiff's health care, and thus liability cannot attach to them under the *respondeat superior* theory. *Id.; see Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir. 1988) ("supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable").

The defendants offer no evidence that they were unaware of the plaintiff's condition, because they filed no affidavits disputing Reed's claims, nor did they otherwise deny knowledge of his condition. They acknowledge having received two of Reed's complaints, and admit responding to the latter one, but do not indicate what remedial actions, if any, they took to the first.

Reed sued, alleging Eighth Amendment and an Americans With Disabilities Act (ADA) violations. The district court denied both claims, dispatching with the Eighth Amendment claim in a mere three sentences with no analysis. On appeal, Reed does not raise the ADA claim.

## Analysis

### Standard of Review

■ We review the district court's decision to grant summary judgment to the defendants de novo. *Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 344 (7th Cir.1999). We are required to accept all of Reed's evidence as true, drawing all reasonable inferences in his favor, and may not downplay his evidence, or conduct a "paper trial" on the merits of his claim. *Id.* Only if the record indicates that there is no genuine issue of material fact, and that the defendants are entitled to judgment as a matter of law, will we uphold the grant of summary judgment. *Id.* Regardless of the district court's conclusion, if, on our plenary review of the record, we find that a genuine issue of material fact exists, we will reverse a grant of summary judgment and order a trial. *Dorsey v. St. Joseph County Jail Officials,* 98 F.3d 1527, 1530 (7th Cir.1996).

### A.

■ The Eighth Amendment protects prisoners against the infliction of cruel and unusual punishment by the government. The government violates the amendment when it "so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs" including food and medical care. *Helling v. McKinney,* 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (citations omitted). This is precisely what Reed charges the government did to him.

■ For Reed to avoid losing on summary judgment, he must show that these "fail[ures] to provide for his basic human needs" were the result of a responsible prison official's deliberate indifference to his serious medical conditions. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Dunigan ex rel. Nyman v. Winnebago County,* 165 F.3d 587, 590 (7th Cir.1999). This entails satisfying a two-part test ("the *Farmer* test"): the plaintiff must show that 1) his condition was objectively serious, and 2) state officials acted with the "requisite culpable state of mind, deliberate indifference," which is a subjective standard. *Id.*

### B.

■ A condition is objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain," *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir.1997). Such a condition may also arise from a denial of "minimal civilized measures of life's necessities." *Dixon v. Godinez,* 114 F.3d 640, 642 (7th Cir.1997).

■ First, we turn to the plaintiff's allegation that he was denied his medicine and access to health care for three to five days at a time on many occasions. Not all medical conditions are sufficiently serious to implicate the Eighth Amendment. For example, a prison medical staff's refusal to "dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue ... does not violate the Constitution." *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir.1996); *Gibson v. McEvers*, 631 F.2d 95 (7th Cir. 1980) (failure to treat a common cold does not violate Eighth Amendment). However, failure to treat graver, if not potentially fatal, injury does. 97 F.3d at 917.

Recently, this court ruled that it "bordered on barbarous" to withhold pain-alleviating medication from a patient suffering from cancer where the illness caused blistering which made it difficult for the prisoner to swallow food. *Ralston v. McGovern*, 167 F.3d 1160, 1161–62 (7th Cir. 1999). We have also held that unmedicated epilepsy posed a "serious threat" to a prisoner's health. *Hudson v. McHugh*, 148 F.3d 859, 863 (7th Cir.1998). In *Gutierrez*, we stated that it was "manifestly clear" that an untreated infected cyst which caused "excruciating pain" sometimes accompanied by a fever could result in unnecessary infliction of pain, and was thus objectively serious. 111 F.3d at 1373. Finally, in *Cooper*, the court found that failure to treat cuts, severe muscular pain, and a prisoner's burning sensation in his eyes and skin also satisfied the first prong of the *Farmer* test. 97 F.3d at 916–17.

Although the "serious medical need formulation is far from self-defining," *see Gutierrez*, 111 F.3d at 1370, it clearly applies here. The ailments suffered by Reed were certainly more than mere sniffles or the common cold. Reed's medical state was comparable to or worse than the plaintiffs in the relevant case law. He claims that the denial of doctor-prescribed medicine led to agonizing and extreme pain, internal bleeding, violent cramps and periods of unconsciousness. Thus, we conclude that his maladies resulting from the alleged denials constituted a serious medical condition.

The plaintiff also claims that the defendants denied him the "minimal civilized measure of life's necessities" by withholding food from him on many occasions for three to five days at a time. As the defendants point out, we have never addressed the question of whether depriving a prisoner of food for any period of time violates the Eighth Amendment. They argue that such a lengthy deprivation is not of an objectively serious magnitude to constitute an Eighth Amendment violation.

The Supreme Court has noted in dicta that it would be an Eighth Amendment violation to deny a prisoner of an "identifiable human need such as food." *Wilson v. Seiter*, 501 U.S. 294, 304, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Drawing on this principle, the Eighth Circuit found that denying prisoners four consecutive meals over two days violated the objective component of the *Farmer* test. *Simmons v. Cook*, 154 F.3d 805, 809 (8th Cir.1998); *compare Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir.1998) (noting that denial of one out of every nine meals is not a constitutional violation) *with Cooper v. Sheriff of Lubbock County*, 929 F.2d 1078 (5th Cir. 1991) (failure to feed a prisoner for twelve days unconstitutional); *see also Dearman v. Woodson*, 429 F.2d 1288, 1289 (10th Cir.1970) (prisoner who was deprived of food for 50+ hours had a viable Eighth Amendment claim).

■ We agree that in some circumstances an inmate's claim that he was denied food may satisfy the first *Farmer* prong. This is not to say that withholding of food is a *per se* objective violation of the Constitution; instead, a court must assess the amount and duration of the deprivation. *See Talib*, 138 F.3d at 214 n. 3. In addition, we note that the plaintiff was already infirm, and an alleged deprivation of food could possibly have more severe repercussions for him than a prisoner in

good health. Taking all of this into account here—where no extraordinary or extenuating circumstances appear to exist—we cannot conclude that the charged deprivations were insufficiently serious to preclude an Eighth Amendment claim.

## C.

 Because Reed has satisfied the "sufficiently serious" component of his claim, we next look to see whether there is a genuine issue of material fact as to whether the defendants acted with deliberate indifference toward his condition. State officials are deliberately indifferent if they "know of and disregard an excessive risk to inmate health or safety." *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir.1999) (citation omitted). The plaintiff must show that the officials are "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw the inference." *Id.* quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). He must also show that the defendants acted with reckless disregard toward the serious need by "inaction or woefully inadequate action." *Hudson v. McHugh*, 148 F.3d 859, 863 (7th Cir.1998).

The record indicates that Reed sent three letters of complaint to the defendants, and also filed internal prison grievances about the withholding of his identification badge, and the deprivations of food and medicine. The defendants do not deny receiving these letters or that they were aware of the conditions to which Reed was subjected. In fact, they acknowledge receipt of at least two letters, one on October 14, 1994 and a second on April 26, 1996. The record also contains a third letter sent ·to at least one of the defendants on October 24, 1995, which contained similar complaints. These letters put the defendants on notice of Reed's complaints. Clearly, this satisfies the requirement that a defendant be aware of facts "from which the inference could be

drawn that a substantial risk of serious harm exists" to the defendant. *Cf. Delgado–Brunet v. Clark*, 93 F.3d 339, 345 (7th Cir.1996) (Plaintiff sued a correctional officer for failure to stop him from being beaten by another prisoner. The court found that the defendant was not aware of a risk, because the plaintiff did not specifically forewarn officer that he would be the subject of an attack, and "offered nothing else to suggest that [the defendant] was aware of the risk.").

 Whether the defendants drew the inference that denying Reed his identification badge presented a substantial risk may be proved by circumstantial evidence. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir.1996), *cert. denied*, 520 U.S. 1230, 117 S.Ct. 1822, 137 L.Ed.2d 1030 (1997). A fact finder may conclude that a defendant drew this inference from "the very fact that the risk was obvious." *Id.* Here, facts were made known to the defendants, and the risk they presented were sufficiently obvious that a jury could conclude that the defendants drew the requisite inferences.

The remaining question is whether the defendants' response can be characterized as either inaction or woefully inadequate. *Hudson*, 148 F.3d at 863. This goes to whether the plaintiff can show the "response element" of the subjective prong of the *Farmer* test. *Id.* at 864. If the plaintiff creates an issue of fact on this issue, he need not show that the defendants intended or hoped to harm him, as the defendants suggest. *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir.1996). Reed's argument hinges on the fact that the prison officials were specifically made aware of his problem, but did not stop it from happening again. *See Vance*, 97 F.3d at 993 ("[A] prison official's knowledge of prison conditions learned from an inmate's communication can ... require the officer to exercise his or her authority and to take the needed action to investigate, and if necessary, to rectify the offending condition.").

The defendants point out that the day after the April 26, 1996, letter was received, prison officials immediately returned Reed's identification badge, and informed the plaintiff that if the situation reoccurred, he should file a new grievance immediately. Their response to the first letter, however, was not so efficacious.

After receipt of a nearly identical grievance on October 14, 1994, the defendants told Reed that his concerns were "duly noted" and that the policy would be reviewed. However, the defendants' brief does not indicate what action was taken to ensure the situation would not occur again. Based on the plaintiff's October 25, 1995, letter in which he reiterated his earlier complaints, a jury could find that the defendants did nothing to fulfill their promise. Thus, taking the plaintiff's claim as true that there were "many occasions" between 1994 and 1996 on which he suffered the complained of deprivations, Reed suffered a "prototypical case of deliberate indifference." *Hudson*, 148 F.3d at 864 (deliberate indifference established where prisoner with a potentially serious problem repeatedly requested aid, received none and suffered a serious injury). In a situation such as this, where according to the allegations the defendants knew about periodic substantial deprivations of food and medicine and did nothing for almost two years to remedy the situation, the plaintiff's burden to show an inadequate response is fulfilled. *See id.*

■ The defendants argue that even if their responses to Reed's letters and grievances were inadequate, we should look at all of the medical services the plaintiff received and conclude that they did not act with deliberate indifference toward him. The record indicates that Reed has received extensive treatment for his ailments during the time of his incarceration. The defendants are correct—we "must examine the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to his serious medical needs." *Dunigan ex*

*rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir.1999); *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir.1996).

Both of those cases are easily distinguished from this one. The plaintiff in *Gutierrez* received treatment over a ten-month period and at most experienced an "isolated occasion or two where he did not receive prompt treatment." *Id.* at 1374. Even when the plaintiff was unable to see a doctor as quickly as he wished, he received medicine and other prescribed treatments. *Id.* at 1375. Balanced against the extensive treatments he received, the occasional delays he complained of were "simply isolated instances of neglect, which taken alone ... cannot support a finding of deliberate indifference." *Id.*

■ In *Dunigan*, the prisoner had received adequate medical care continuously for three months. 165 F.3d at 591. Not until the final three days of his life was there any suggestion that the defendant prison guards failed to properly care for the decedent. *Id.* Even at that point, however, the guards "remained attentive to [the prisoner's] health," and were "responsive to [his] needs, helping him to sit up and alerting ... the medical staff to [his] complaints." *Id.* at 592. The court held that there was nothing "markedly atypical" about the decedent's treatment in the last three days of his life warranting an inference that the defendants strayed from their well established pattern of appropriately caring for him. *Id.* If such evidence existed, summary judgment might have been inappropriate, because even where a plaintiff has previously received good care, "mistreatment for a short time might ... be evidence of a culpable state of mind" regarding deliberate indifference. *Id.* at 591.

In a nutshell, this is the opposite of *Dunigan* and *Gutierrez*. While Reed often received adequate care, there were allegedly a number of occasions that were "markedly atypical," and not the isolated

examples of neglect the court focused on in *Gutierrez*. Should Reed prove his case, this would be exactly the kind of case where "mistreatment for a short time" would be evidence of a culpable state of mind. Thus, if true, the claimed three to five day deprivations of food and medicine undermine the defendants' claim that the totality of the plaintiff's medical care shows that they were not deliberately indifferent to him.

### D.

For the reasons discussed, we find that the plaintiff can show a genuine issue of material fact regarding his Eighth Amendment claim. Accordingly, the district court's grant of summary judgment to the defendants is REVERSED, and we REMAND this cause for trial.