**Mark J. BENNER, Plaintiff–Appellant,**

v.

**Eugene McADORY, et al.,
Defendants–Appellees.**

**No. 01–2140.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 14, 2001.

Decided April 5, 2002.

484

Before COFFEY, EASTERBROOK,
and DIANE P. WOOD, Circuit Judges.

**ORDER**

After inmate Mark Benner was badly burned in an attack by another inmate at Illinois's Stateville Correctional Center, he sued four prison officials under 42 U.S.C. § 1983 claiming that they violated his Eighth Amendment right to be free from cruel and unusual punishment by their failure to protect him from the attack. The district court granted summary judgment in favor of all four defendants, holding that Benner had no evidence of the deliberate indifference that must be shown to transform a case from one in which simple negligence is involved to an Eighth Amendment violation. The court also held that the officials' actions were not a proximate cause of Benner's injuries. We agree with the district court on both points, and we therefore affirm.

When Benner arrived at Stateville in May 1994, he reported his concerns about two different gangs, the Gangster Disciples and the Northsiders, to prison officials. He told the authorities that each of those gangs had a "hit" out on him, and he gave specific names of gang members who were his enemies. This information was duly recorded in his prison file. Benner served his first year at Stateville in protective custody, but in June 1995 he was moved to a disciplinary segregation unit. Seven or eight months later, he asked the superintendent of that unit, Eugene McAdory, to transfer him to a single-person cell in the administrative hold unit, the 3–G wing of Unit I. McAdory promptly did so. Shortly thereafter, Benner was threatened by two Gangster Disciples in the new unit, and he asked for yet another move. The names of the two inmates who threatened him were placed on the prison's "Offender Tracking System," but Benner was not moved right away.

Benner's cell was on the third floor of the unit, next to inmate Robert Felton's cell. Benner and Felton conversed from time to time, and Benner had lent Felton some legal materials through their "chuckholes" (the small opening in the middle of a solid cell door). Felton was a Gangster Disciple, but Benner had never complained about him and he was not listed on the Offender Tracking System as a threat to

Benner. But Felton was otherwise known to be an extremely violent and very dangerous individual who engaged in such offensive and harmful activities as throwing feces and scalding water at others. One week before the incident with Benner, Felton had used a "stinger" (that is, a small metal ring attached to an electrical cord—contraband for Unit I inmates, but Felton had one nonetheless) to boil water, which he then flung at inmate Alonzo Wood. Wood reported the incident to McAdory, but no one removed the stinger from Felton's cell at that time.

Stateville policy required all Unit I prisoners, such as Benner and Felton, to be escorted individually, with their hands cuffed behind their backs, when they left their cells. Compliance with this policy was less than complete, however, and occasionally inmates broke away from their escorts.

That sets the stage for the incident about which Benner is complaining. Around noon on April 12, 1996, Officer James Yarbrough retrieved Benner for sick call. In keeping with prison policy, he handcuffed Benner's hands through the chuckhole and then accompanied him to the dayroom in the unit. For unexplained reasons, Yarbrough then left Benner alone in the dayroom; Benner decided to go down to the first floor sick call room alone. After his medical visit was finished, he also returned unescorted to the unit's dayroom. Passing Officer Freddie Ray, who was in the control booth monitoring the dayroom and other areas of the unit, Benner mentioned that two gangs had a hit out for him, and he asked Ray to escort him back to his cell and to lock it. Ray ignored Benner and made no response to the request. Benner waited and then set out to find someone else who could serve as his escort. Unsuccessful, he returned yet again to the dayroom. A short time later, he left to try again to find a prison official

to escort him back to his cell. He found Sergeant Clarence Wright and asked for his assistance; Wright instructed him to go to his wing and a gallery officer would come to lock him up. Benner did so, but no officer showed up.

While Benner was waiting near his cell, Felton called out and told him that he had some important legal papers belonging to Benner. Felton told Benner that if Benner did not come to retrieve them immediately, Felton would throw them away. Felton then placed the papers in his chuckhole, and Benner approached the cell. As Benner reached for the papers, Felton pulled the stinger out of a cup and hurled boiling water at Benner, scalding his face, arm, and back. Benner rushed to McAdory's office, and from there he was taken first to the Health Care Unit and later to a local hospital for treatment. Felton's attack caused Benner to suffer second-degree burns to his face; right shoulder; arm and chest; and left arm.

The central question is whether this sequence of events was enough to raise a triable issue on the question whether any of the prison officials in question—McAdory, Wright, Yarbrough, or Ray—exhibited the kind of deliberate indifference to Benner's safety that amounts to cruel and unusual punishment under the Eighth Amendment. Prison officials have a duty to protect prisoners from violence at the hands of their fellow inmates. See *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). But this does not mean that every time an inmate harms another, the Constitution is implicated. Benner's burden is higher: he must show that he was incarcerated under conditions posing a substantial risk of serious harm and that the defendants acted with deliberate indifference to that danger. *Id.* at 834; *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir.1999). It is the latter half of that standard that is at issue here; for

present purposes we can assume that the scalding incident or the risk of something like it was sufficiently substantial and serious to qualify for the first half.

Deliberate indifference has both a subjective and an objective component. As the Supreme Court explained in *Farmer*, the official must both be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and "he must also draw the inference." *Farmer*, 511 U.S. at 837–38. In a failure-to-protect case like this one, the plaintiff must introduce evidence tending to show that the prison official(s) were aware of a specific, impending, and substantial threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir.1996). "Mere negligence or even gross negligence does not constitute deliberate indifference." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir.1996).

█ Benner would like to convince us that there is a genuine issue of fact about the officials' deliberate indifference, but we are unpersuaded. We have no doubt that the story he recounts might be one of negligence, or even gross negligence; indeed, we hope that prison officials at Stateville and at other institutions in Illinois are not in the habit of having inmates wander about unescorted in violation of prison policies. But we see no evidence that any of the four defendants had the state of mind that *Farmer* says must exist for a constitutional case. Officer Ray, the central booth guard, may certainly have been negligent and rude when he totally ignored Benner's request, but Ray was responsible for monitoring a wide area. There is no evidence to show that Ray was aware that Benner would walk close enough to Felton's cell (or to any other cell) to make himself vulnerable to attack. The same is true of Sergeant Wright, whose worst failing seems to be that he did not locate an escort officer in

time to avert the harm—a harm that there is no evidence he could have foreseen. There is similarly no evidence suggesting that Officer Yarbrough, the one who originally left Benner alone in the dayroom and who arguably violated his duty to keep Benner under escort as Benner went to and from the medical unit, should have expected Felton's attack. Indeed, it is not even clear that Yarbrough knew about the gang "hit" that had been placed on Benner or that he knew which inmates in the unit were in the hostile gang. It is worth recalling that Benner had never identified Felton to the prison authorities as someone who should be on the Offender Tracking System for him, so even if Yarbrough had memorized the list, it would not have helped here. Finally, McAdory too does not look particularly good here, but there is nothing supporting the leap from negligence to deliberate indifference. According to Benner, McAdory knew three crucial things: first, that Felton was a dangerous inmate who had a habit of throwing things at passers-by; second, that Felton was a Gangster Disciple; and third, that the Gangster Disciples had a hit out on Benner. Knowing all that, McAdory still decided to assign Benner a cell next to Felton's. But this was the segregation unit. Prisoners in segregation typically may not wander around in the hallways, visit other prisoners in their cells, or even approach other prisoners' cells. McAdory would thus have had no reason to assume that the adjacent cells posed a particular threat to Benner. Moreover, once again it is significant that Benner had never identified Felton as someone out to get him. Finally, even though McAdory can be charged with knowledge that Felton had the stinger (because of the Wood incident), the prison was then in the process of removing stingers from all cells. Even if McAdory knew that the staff had not yet reached Felton's cell, this too indicates

that he would have had no reason to think that Felton would be a long-term threat because of his improvised weapon.

█ Last is the fact that Benner himself was immediately responsible for the unfortunate incident. It was he who yielded to Felton's threat to destroy the legal papers and who placed himself in harm's way. It was he who decided to move through the prison unescorted, from the dayroom to the medical unit, from the medical unit back again, and finally back to the area of his cell. The four defendant prison officials cannot be labeled "deliberately indifferent" to Benner's safety when Benner's real complaint is that the officials were not controlling Benner himself more tightly. As the district court put it, the officials' actions were not the proximate cause of the harm that befell Benner, and thus they cannot be liable to him under § 1983.

The judgment of the district court is AFFIRMED.