NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 17, 2017[*]
Decided March 22, 2017

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 16-2421

| | |
|---|---|
| RANDALL BLUE, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of |
| | Wisconsin. |
| *v.* | |
| | No. 13-CV-01439 |
| MICHAEL BAENEN, et al., | |
| *Defendants-Appellees*. | William C. Griesbach, |
| | *Chief Judge*. |

**O R D E R**

Randall Blue, a Wisconsin prisoner, appeals the grant of summary judgment against him in this suit brought under 42 U.S.C. § 1983. He asserts that prison staff violated his Eighth and Fourteenth Amendment rights by deliberately ignoring a risk that he faced in climbing to his top bunk bed, causing him to fall and injure himself.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. CIV. P. 34(a)(2)(C).

Because Blue lacks evidence suggesting that the defendants knew about and ignored a substantial risk of serious harm, we affirm.

In reviewing the grant of summary judgment against Blue, we recite the facts in the light most favorable to him. *See Tradesman Int'l, Inc. v. Black*, 724 F.3d 1004, 1009 (7th Cir. 2013). Green Bay Correctional Institute uses bunk beds that do not include a ladder. The parties dispute whether inmates typically use the lower bed to climb to and from the upper bunk. Prison staff attest that inmates get up and down from the top bunk without difficulty by stepping on the lower-bunk frame. But one prisoner attests that "no one dare[s]" climb on another inmate's bed frame.

Blue uses a chair to reach his top bunk. The prison provides a chair in double-occupancy cells so that the inmate assigned to the top bunk has a place to sit, but the chair is not intended for climbing. Blue says that he has told staff that for him "there's no other way to climb down." In July 2013, as he was using his chair to reach his bed, it slipped from under him (as it had before). His cellmate caught him, saving him from potential injury.

This incident led Blue to submit a grievance to Cathy Francois, a complaint examiner, requesting a new chair. She told him to "inform Capt. Pusich" that he wanted "a sturdy chair [he could] use to get on and off the top bunk, so that [he would] not slip and hurt [him]self." Francois also advised Blue to request a pass from health services for a lower bunk if he felt that he could not safely climb. Blue did not do this. Finally Francois said that if Pusich was unable to "address the issue to [Blue's] satisfaction," Blue could resubmit his grievance, with Pusich's signature. When Blue resubmitted it the next week, it was unsigned by Pusich, and Francois recommended that the warden dismiss it. The warden, Michael Baenen, did so.

Eventually Blue asked Pusich for a sturdy chair. Blue explained that he had "filed a complaint about … slipping on the chair climbing down from [his] top bunk," but it had been rejected because he had not contacted Pusich. He asserted he had "no safe way of climbing" to and from the top bunk. Pusich responded that "chairs are limited" and did not give Blue one, but suggested that he ask the unit staff for help. Again Blue did not ask for a lower-bunk pass.

A little over a week later, Blue fell off the chair when trying to get down from the top bunk. (Blue asserts in a brief that one of the legs of the plastic chair broke under his weight, though he never attested to this fact.) After a hospital visit, Blue was diagnosed with neck and lower-back strain. He then requested, and two weeks later received, a

lower-bunk restriction. Over the next five months, he saw health-services staff for pain from his fall at least 32 times and was also sent to off-site doctors multiple times.

Blue then brought this deliberate-indifference suit against Warden Baenen, Captain Pusich, and the complaint examiner Francois for not providing a sturdy chair or ladder. (He also sued a doctor for faulty medical treatment, but he abandons that claim on appeal, replacing it with a claim that he did not raise below, so we do not discuss it.) Baenen and Pusich attested that they did not know of any physical condition that prevented Blue from reaching the top bunk by using the lower-bunk frame, as they have seen many inmates do. Blue countered with two arguments. First, inmates assigned to top bunks fear using the bottom-bed frame because that could generate fights with cellmates. Second, his request for a lower-bunk restriction three years earlier based on his back pain had been denied.

The district court granted summary judgment to the defendants. It noted that district courts around the country have held that the lack of a ladder to reach a top bunk does not pose a serious risk of harm. And even if it did, the court continued, Blue did not show that the defendants knew about that risk and disregarded it.

To succeed on a claim of deliberate indifference, Blue must submit evidence that he was "incarcerated under conditions posing a substantial risk of serious harm" and that the defendants knew of but ignored the risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016). We will assume that an inmate assigned to a top bunk who cannot safely access the bed may face a sufficiently serious risk of harm. *See Withers v. Wexford Health Sources, Inc.*, 710 F.3d 688, 689–90 (7th Cir. 2013). We may also assume that Blue notified the defendants that he used only a chair to get to his bed, that the chair was unsteady, that he had fallen when climbing on it, and that he could injure himself if he used it again. *See Gevas v. McLaughlin*, 798 F.3d 475, 480–81 (7th Cir. 2015); *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999).

But to overcome summary judgment, Blue must point to evidence that the defendants *knew* (or recklessly avoided knowing) that he could not use the lower-bunk frame to get into his bunk safely. *See Farmer*, 511 U.S. at 834. He has not. Although he says he asserted to prison staff that he had "no other way" to reach his top bunk besides a chair, "[t]he Constitution does not oblige guards to believe whatever inmates say." *Riccardo v. Rausch*, 375 F.3d 521, 527 (7th Cir. 2004). He must identify some other information available to staff that would enable them to "separate fact from fiction." *Id.* He responds that staff *must* have known that he could not safely use the lower-bunk

frame because prison culture prohibits stepping on a cellmate's bed. But neither he nor any other inmate swears to the supposed cultural prohibition on bed-frame climbing, and his unsworn argument is not evidence. *See* Fed. R. Civ. P. 56(c)(1)(A), (e); *cf. Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014). Although one inmate asserted that "no one dare[s]" climb on a bed frame, the inmate does not say why or assert that staff members know this.

In any case, even if the defendants knew that Blue could not safely step on his cellmate's bed frame, they were not deliberately indifferent to his situation. Francois told Blue about a safe, easy alternative to both the chair and the bed frame: He could request a lower-bunk restriction. Yet despite the simplicity of this solution, Blue did not ask for one until after his injury. Blue replies that it would have been futile to ask for one because three years earlier he had been denied one for his back pain. But the record reveals too little about that earlier request to permit a reasonable inference that all requests, no matter how well-founded, are futile. Anyway, "[n]o one can know whether administrative requests will be futile; the only way to find out is to try." *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999). And Blue's success in receiving a lower-bunk restriction after he did ask confirms that requests are not futile. Thus even though the defendants did not give Blue a new chair or ladder to climb to and from his upper bunk, they were not deliberately indifferent to his needs.

AFFIRMED.