In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1281

Ronnie W. Carroll,

Plaintiff-Appellant,

v.

George E. DeTella, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 2443--Harry D. Leinenweber, Judge.

Submitted May 3, 2001--Decided July 3, 2001


  Before Fairchild, Bauer, and Posner,
Circuit Judges.

  Posner, Circuit Judge.  The plaintiff, a
long-time Illinois prison inmate with
extended sojourns at Stateville and
Menard, brought this suit under 42 U.S.C.
sec. 1983 for damages and injunctive
relief against Illinois prison officials
and the Illinois Environmental Protection
Agency and two of its employees. He
claims that the drinking water at
Stateville is contaminated with radium
and the drinking water at Menard with
lead. The district court granted summary
judgment for the defendants. The Illinois
EPA is a state agency and thus not a
"person" suable under section 1983, Will
v. Michigan Dept. of State Police, 491
U.S. 58, 71 (1989); Arsberry v. Illinois,
244 F.3d 558, 561 (7th Cir. 2001), and
its two employees were not served. The
plaintiff's complaint about the lead in
the water at Menard can also be disposed
of quickly. The record establishes that
the presence of lead in the water is due
to the corrosion of the water pipes,
which are made of lead that dissolves in
the water--but only when the water is
still, as it is overnight, when no one is
using it. When the water is flowing, the
lead in the pipes does not dissolve. So
the plaintiff was told to let the water
run for a few minutes in the morning
before drinking it, which eliminates the
hazard, though it is only an interim

precaution while the prison arranges to have the pipes treated or replaced. All this is remote from cruel and unusual punishment.

The radium at Stateville presents a more difficult question. Since 1988, when he first became an inmate of the Illinois prison system, the plaintiff has spent a total of almost four years at Stateville. In 1993, in response to complaints made by inmates to the Illinois EPA concerning the quality of the drinking water, the warden assured the inmates that it was safe--yet three days later the prison began providing its employees with bottled water free of charge to allay their concerns about the safety of the prison's water. Three years later, in response to the plaintiff's inquiry, the Illinois EPA told him that the water contained radium in excess of the maximum level set by the federal EPA. That level, for the combination of radium isotopes involved (radium 226 and radium 228), is 5 pCi/l (picocuries per liter). 40 C.F.R. sec. 141.15. The level in Stateville's water was almost twice that. The plaintiff requested the prison to supply him with bottled water free of charge, but it refused. It was for sale in the prison commissary but the plaintiff claims that he can't afford to buy it.

The following year, 1998, the Illinois EPA told the plaintiff that while Stateville's water supply continued to exceed the federal maximum and that 80 other Illinois water systems had a similar problem (though how similar--that is, what the level of radium in those communities' water is--is not indicated), no remedial action would be taken because the federal EPA was considering raising the maximum level from 5 pCi/l to 20 pCi/l and at that level the concentration of radium in Stateville's water would be well below the maximum. So far as we know, the EPA has not yet raised the level and so Stateville's water continues to contain a level of radium that exceeds the federal maximum. There is some medical evidence that a person who ingested 5 pCi/l of radium 226 plus radium 228 for 70 years would have a 1/10,000th higher risk of cancer; the record contains no evidence on the hazards if any of ingesting twice that level of radium for four years.

Poisoning the prison water supply or deliberately inducing cancer in a prisoner would be forms of cruel andunusual punishment, and might be even if the harm was probabilistic or future rather than certain and immediate, Helling v. McKinney, 509 U.S. 25 (1993). But failing to provide a maximally safe environment, one completely free frompollution or safety hazards, is not. McNeil v. Lane, 16 F.3d 123, 125 (7th Cir. 1994); Steading v. Thompson, 941 F.2d 498 (7th Cir. 1991); Harris v. Flemming, 839 F.2d 1232, 1235-36 (7th Cir. 1988); Clemmons v. Bohannon, 956 F.2d 1523, 1527 (10th Cir. 1992) (en banc). Many Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans. McNeil v. Lane, supra, 16 F.3d at 125; Givens v. Jones, 900 F.2d 1229, 1234 (8th Cir. 1990). It would be inconsistent with this principle to impose upon prisons in the name of the Constitution a duty to take remedial measures against pollution or other contamination that the agencies responsible for the control of these hazards do not think require remedial measures. If the environmental authorities think there's no reason to do anything about a contaminant because its concentration is less than half the maximum in a proposed revision of the existing standards, prison officials cannot be faulted for not thinking it necessary for them to do anything either. They can defer to the superior expertise of those authorities.

The fact that the prison gave bottled water free of charge to its own staff does not show an awareness of a substantial hazard. If an employee has an irrational fear, that is nevertheless a brute fact that the employer has to take into account lest the employee quit or demand a higher wage to compensate him for bearing the supposed hazard. It is no proof that the employer shares the fear. Prison officials do not demonstrate that deliberate indifference to the inmates' welfare which is the sine qua non of cruel and unusual punishment when they refuse to take measures against hazards that they reasonably believe to be nonexistent or slight.

If the prison authorities are violating federal antipollution laws, the plaintiff may have a remedy under those laws. See, e.g., 42 U.S.C. sec. 9659; Schalk v. Reilly, 900 F.2d 1091, 1094-95 (7th Cir. 1990); Clinton County Comm'rs v. EPA, 116 F.3d 1018, 1024-25 (3d Cir. 1997) (en banc); Conservation Law Foundation v. Reilly, 950 F.2d 38, 40 (1st Cir. 1991). His remedy is not under the Eighth Amendment.

Affirmed.