**Brian A. MAUS, Plaintiff–Appellant,**

v.

**James MURPHY, et al., Defendants– Appellees.**

**No. 01–1647.**

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 18, 2001 *.

Decided Jan. 4, 2002.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before POSNER, MANION, and ROVNER, Circuit Judges.

ORDER

Inmate Brian Maus filed this lawsuit under 42 U.S.C. § 1983, alleging that inadequate medical treatment and air pollution from a construction project at the Green Bay Correctional Institute caused his right lung to collapse and subjected him to cruel and unusual punishment in violation of the Eighth Amendment. The district court granted summary judgment in favor of the defendants, two prison nurses, a prison doctor, the prison warden, and two outside contractors responsible for the construction. Because the prison medical staff did not act with deliberate indifference toward Maus's condition, and because Maus offered no evidence to show that the construction project caused his injuries, we affirm the judgment of the district court.

Contractors used blow torches and grinders to replace prison cell-fronts. The prison had poor ventilation, and the work created fumes, soot, and smoke that entered Maus's cell and the cells of other inmates. According to Maus, the pollution left residue on the floor of his cell and caused him to experience pain when breathing. Other inmates said that the cell-front work caused them to have headaches and made their breathing difficult as well. In the very early hours on August 15, 1994, Maus, who smokes, awoke with severe chest pain. Around 3:00 a.m. guards transported him to the prison Health Services Unit. After nurse Beverly Woods examined Maus, took his vital signs

and drew a blood sample to rule out appendicitis, she decided to keep him at the Health Services Unit for observation. Guards visually checked Maus's condition every thirty minutes, and around 7:30 a.m. nurse Julie DeGrave took Maus to be examined by the prison doctor, Dr. Reves. When Maus came out of the examination room, DeGrave noted that Maus's color had changed. Dr. Reves ordered DeGrave to give Maus an EKG, and immediately thereafter Maus collapsed. DeGrave administered oxygen, and paramedics arrived to take Maus to an outside hospital. Doctors diagnosed Maus with a right tension pneumothorax (collapsed lung), which they relieved with a chest tube, and possibly bullous emphysema. After recommending that he stop smoking, doctors released Maus, and he returned to prison on August 24.

In the district court, Maus presented evidence about the conditions in the prison caused by the cell-front repairs and the events leading up to his hospitalization. He also presented affidavits asserting that the construction exposed inmates to lead because the cell-fronts were painted with lead-based paint. In addition Maus presented federal and state regulations prescribing safe levels of lead in the workplace, as well as a personal laboratory report from August 1996 (two years after his injury) indicating the presence of small amounts of lead in his blood. Finally, Maus presented affidavits from five of his family members, three of whom smoked, denying any family history of lung disease.

■ To overturn summary judgment in favor of the prison nurses and doctor, Maus needs to show a genuine question of fact whether they acted with "deliberate indifference" toward his medical condition. See *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 105–06, 97

S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference entails more than "mere negligence." *Farmer*, 511 U.S. at 836, 114 S.Ct. 1970; *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir.2001). Instead it requires a prisoner to show that prison medical professionals were subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk to the prisoner's health posed by lack of treatment. *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970; *Wynn*, 251 F.3d at 593; *Zentmyer v. Kendall County*, 220 F.3d 805, 811 (7th Cir. 2000).

■ Maus contends that he raised a triable issue as to whether the prison doctor and nurses were deliberately indifferent when they kept him at the Health Services Unit for five hours without treating him and then, after his lung collapsed, "delayed getting his lung fixed." Although delay may reflect deliberate indifference, *see Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir.1996), nothing in the record supports an inference that, at the time he was kept for observation, prison medical personnel knew of or disregarded the condition of Maus's lung. The evidence shows that nurse Woods promptly examined Maus when he arrived at the Health Services Unit and found his overall health condition serious enough to warrant keeping him for observation. Dr. Reves also examined Maus and ordered him to undergo an EKG. When Maus's condition rapidly deteriorated, nurse DeGrave administered oxygen, an ambulance was called, and paramedics took Maus to an outside hospital. Although Maus contends that the medical staff should have diagnosed his condition more promptly because he complained of pain, he has not pointed to any evidence that might suggest that a delay in treatment reflected the staff's disregard for an excessive risk to his health. *See Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

And misdiagnosis by itself does not amount to the kind of deliberate indifference prohibited by the Eighth Amendment. *See Estelle,* 429 U.S. at 292, 97 S.Ct. 549; *Steele v. Choi,* 82 F.3d 175, 178 (7th Cir.1996); *Johnson v. Quinones,* 145 F.3d 164, 168 (4th Cir.1998). The district court therefore properly granted summary judgment in favor of Dr. Reves and nurses Woods and DeGrave.

■ Maus also challenges the district court's conclusion that Warden Murphy and the contractors cannot be held liable for the construction work that allegedly subjected him to an excessive risk of harm. Although exposing inmates to air pollution, particularly on the scale alleged by Maus, may amount to deliberate indifference, *e.g., Helling v. McKinney,* 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), failing to provide an environment "completely free from pollution or safety hazards" is not actionable under the Eighth Amendment, *Carroll v. DeTella,* 255 F.3d 470, 472 (7th Cir.2001). But we need not decide whether the conditions of Maus's confinement fell substantially below the standard enjoyed by non-prisoners, *see id.,* for Maus has not presented any evidence to show that air quality in the prison, rather than some other factor like his smoking, caused his lung to collapse in the first place.

■ To recover damages under § 1983, a plaintiff must show both injury and "a causal connection between that injury and the deprivation of a constitutionally protected right." *Henderson v. Sheahan,* 196 F.3d 839, 848 (7th Cir.1999). The basic tort-law rule requiring a plaintiff to show that the defendants caused the plaintiff's injuries applies with equal force to deliberate indifference claims under the Eighth Amendment. *See id.; Babcock v. White,* 102 F.3d 267, 271 (7th Cir.1996); *LaMarca v. Turner,* 995 F.2d 1526, 1538–39 (11th Cir.1993). Consequently Maus

cannot prevail by demonstrating that the cell-front construction merely exposed him to a risk of harm; instead he must show that the project actually caused him harm or was reasonably certain to cause him future serious injury. *See Henderson,* 196 F.3d at 848–49; *Babcock,* 102 F.3d at 272. But as the district court observed, Maus did not present evidence connecting lung complications to any risks associated with exposure to lead paint, nor did he present evidence addressing the causes of a collapsed lung. The district court therefore properly granted summary judgment in favor of Murphy and the two contractors.

■ Maus's remaining arguments are equally without merit. First he claims that the district court should have granted his request to strike the defendants' motion for summary judgment because it was filed 80 days after the district court's deadline for filing dispositive motions. But district courts have wide latitude in managing their dockets, *see United States v. Corona-Navarro,* 128 F.3d 568, 572 (7th Cir. 1997), including the power to consider an untimely motion for summary judgment, *see Jones v. Coleman Co.,* 39 F.3d 749, 753–54 (7th Cir.1994). Accordingly the district court acted within its discretion in denying Maus's motion.

■ Maus next argues that the district court improperly denied his motion to appoint counsel because his case required expert testimony, and presumably a lawyer would be needed to secure or evaluate that testimony. Assuming (as the district court did) that Maus's unsuccessful attempts to retain three attorneys amounted to a reasonable effort to secure private counsel, *see Zarnes v. Rhodes,* 64 F.3d 285, 288 (7th Cir.1995); *Jackson v. County of McLean,* 953 F.2d 1070, 1072–73 (7th Cir. 1992), Maus's inability to find a lawyer still does not mean that the district court

should have appointed one for him. Even in Eighth Amendment cases involving "tricky issues of state of mind and medical causation," we will uphold a district court's decision not to appoint counsel if a litigant appears "as competent as any average pro se litigant." *Hudson v. McHugh,* 148 F.3d 859, 862 n. 1 (7th Cir.1998). Given Maus's able handling of this case in the district court and in his brief on appeal, we do not think that the district court abused its discretion in denying Maus's request for an attorney. *See id.; Zarnes,* 64 F.3d at 288; *Farmer v. Haas,* 990 F.2d 319, 321–22 (7th Cir.1993).

■ Lastly Maus contends that the district court should have granted his "Motion to Call Witnesses" in which he asked the court to subpoena three experts and one inmate to testify for him. Maus says that the witnesses would have testified to the conditions in the prison, the proper methods for removing lead paint, and the long-term health risks of exposure to lead paint. As the district court correctly advised Maus, however, the proper way to present evidence in opposition to a motion for summary judgment is through affidavits or some other form of evidence contemplated by Fed.R.Civ.P. 56. Maus did not show that he could not obtain affidavits from any of the witnesses he wished to call. The district court therefore acted properly by denying this motion as well.

AFFIRMED.