**Leslie STANLEY, Plaintiff–Appellant,**

v.

**Thomas F. PAGE, et. al., Defendants– Appellees.**

**No. 00–3234.**

United States Court of Appeals, Seventh Circuit.

Submitted Aug. 20, 2002.*

Decided Aug. 20, 2002.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before BAUER, KANNE, and EVANS, Circuit Judges.

## ORDER

Illinois inmate Leslie Stanley was housed in the East Cellhouse of the Me-nard Correctional Center from December 1995 to October 1997. He and five other inmates filed suit against several Illinois Department of Corrections officials, alleging that their confinement constituted cruel and unusual punishment under the Eighth Amendment. Stanley gave a laundry list of complaints relating to conditions in the East Cellhouse. According to Stanley, peeling paint, a malfunctioning plumbing system, and infestations of mice, birds, and roaches contributed to an unsanitary prison environment. He further claimed that the food and water provided to inmates were inadequate and unhealthy and that the defendants denied his request for cleaning supplies. Individually and in combination, Stanley argued, these deficiencies violated the Eighth Amendment.

The case was certified as a class action for the purposes of seeking injunctive and declaratory relief. In addition, each of the named plaintiffs proceeded individually against the defendants, seeking monetary damages. The court granted summary judgment for the defendants.

Stanley is the only plaintiff who appeals, and he pursues only his individual claim for monetary damages. He argues that the district court erred in finding that he lacked sufficient evidence to support an Eighth Amendment claim. We review the court's grant of summary judgment *de novo*. *Walker v. Benjamin*, 293 F.3d 1030, 1033 (7th Cir.2002).

To make out an Eighth Amendment claim based on prison conditions, an inmate must show that he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). An objectively, sufficiently serious injury is one that denies the inmate "the minimal civi-

lized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Only extreme deprivations will support an Eighth Amendment claim. *Delaney v. De-Tella*, 256 F.3d 679, 683 (7th Cir.2001). Prison officials are deliberately indifferent to deprivations suffered by inmates if they have knowledge of the condition but refuse to take steps to correct it. *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir.1997).

▮ None of the deprivations that Stanley complains of rises to the level of an objectively, sufficiently serious injury. At his deposition, Stanley testified that he suffered only "emotional" harm as a result of seeing mice, roaches, and birds in the cellhouse. But Stanley must establish a predicate physical injury before he can pursue damages for an emotional injury. *See* 42 U.S.C. § 1997e(e). Stanley claims that he suffered headaches as a result of peeling paint in his cell. But he presented no evidence establishing that the peeling paint was the actual cause of his headaches. *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir.1999).

▮ Further, Stanley has not identified any injury suffered as a result of the denial of cleaning supplies or the plumbing problems. Stanley attributes his case of severe athlete's foot to standing water in the cellhouse shower. But even if standing water caused or exacerbated Stanley's athlete's foot, his infection did not cause him "serious harm," and the slow drain in the shower did not pose "an excessive risk" to his health or safety. *Farmer*, 501 U.S. at 837; *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir.1996) ("[A]n inch or two of water in the shower, even where one has a sore toe, is not an 'excessive risk to inmate health or safety' . . . .")

▮ Likewise, Stanley's grievances about the food and water in the East Cellhouse are not actionable. Stanley alleges that during a month-long lockdown in December 1995 the prison menu became repetitious, portion sizes were decreased, inmates were denied utensils at breakfast, and the scrambled eggs had a greenish tint. Moreover, Stanley claims that he found roaches in his ice cubes. But eating unappetizing food with one's hands and foregoing ice cubes in one's drink do not jeopardize health or safety. *Farmer*, 511 U.S. at 837. Stanley's complaints describe temporary inconveniences, not extreme deprivations cognizable under the Eighth Amendment. *Johnson v. Pelker*, 891 F.2d 136, 138–39 (7th Cir.1989).

▮ Stanley's most serious allegation concerns lead-tainted water. Stanley's expert witness, Ward Duel, took two samples of drinking water, neither of which showed levels of lead in excess of EPA limits. Duel noted that the two samples were not taken from randomly selected locations but from locations mandated by prison officials. He added that he could not verify that samples taken from other locations in the cellhouse would also contain low levels of lead and stated that "[l]ead that has built up in the body over a period of time can damage the brain, red blood cells and the kidneys." Stanley was never tested for the presence of lead, however, and Duel's speculation by itself does not establish that lead-tainted water posed an excessive risk to Stanley's health. *See Henderson*, 196 F.3d at 853 (the link between inmate's exposure to second-hand smoke and an increased risk of developing serious health problems was too attenuated and speculative to support an Eighth Amendment claim).

The only significant evidence Stanley presented to support his allegation of lead-tainted water is a letter from an EPA official dated September 30, 1996. The EPA official stated that water in some taps

at Menard contained lead in excess of the EPA limit because the water had been sitting motionless in the pipes for several hours. The official noted that Menard had plans to replace its corroded pipes and advised that, in the meantime, Menard inmates and employees could flush out any lead-tainted water by letting the tap run for a few minutes in the morning before using it. The Eighth Amendment requires prison officials to provide an environment free from excessive health risks, *Farmer*, 511 U.S. at 837, not a "maximally safe environment ... completely free from pollution or safety hazards," *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir.2001). In this case, the risk to Stanley was minimal and easily addressed by running the tap water for a few minutes in the morning to flush out the lead. *See id.* at 471–72.

■ Even if any of the alleged injuries were sufficiently serious, Stanley offered no evidence that prison officials responded to them with deliberate indifference. On the contrary, officials took steps to correct the conditions that Stanley cited. When the cellhouse plumbing malfunctioned, it was repaired. Officials contracted with an exterminator and installed unbreakable windows in the cellhouse to control infestations of mice, roaches, and birds. In addition, Stanley was allowed to repaint the peeling walls of his cell. Further, the problems with the prison menu were remedied once the December 1995 lockdown ended, and the IDOC removed the ice machine that produced the roach infested ice. Finally, Stanley received adequate medical treatment for his athlete's foot infection.

Stanley argues that, even if his claims individually failed to meet the standard for an Eighth Amendment violation, the combination of the conditions he describes amounted to cruel and unusual punishment. But several conditions of confinement, considered in combination, violate the Eighth Amendment "only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The assortment of minor inconveniences that Stanley complains of do not have such a mutually enforcing effect.

Stanley's final argument is that the court erred in allowing the defendants to amend their answer to include a qualified immunity defense. But the district court did not address qualified immunity when it granted summary judgment, and, because we have already determined that Stanley lacked evidence to establish an Eighth Amendment claim, we do not consider this argument.

AFFIRMED.