**Harrison FRANKLIN, Plaintiff–
Appellant,**

v.

**Gary R. MCCAUGHTRY, et al.,
Defendants–Appellees.**

**No. 04–1672.**

United States Court of Appeals,
Seventh Circuit.

Submitted Sept. 23, 2004.*

Decided Sept. 27, 2004.

---

Harrison Franklin, Boscobel, WI, pro se.

Peggy A. Lautenschlager, Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, Douglas S. Knott, Leib & Katt, Milwaukee, WI, for Defendants–Appellees.

Before EASTERBROOK, DIANE P. WOOD, and EVANS, Circuit Judges.

### ORDER

Wisconsin inmate Harrison Franklin alleges in this suit under 42 U.S.C. § 1983 that prison employees repeatedly violated his constitutional rights over a six-year period while he was confined at the Wisconsin Secure Program Facility ("WSPF") and before that the Waupun Correctional Institution ("WCI"). The district court dismissed a number of Franklin's claims in interim orders and granted summary judg-

ment for the defendants on those that remained. Franklin appeals, seeking to revive nearly every claim in his lengthy complaint.

■ We start with the seven claims dismissed at initial screening, *see* 28 U.S.C. § 1915(a), or in response to the defendants' motion to dismiss. First, Franklin claims that he discovered hairs on his food on several occasions. While this surely must have been unappetizing, it comes nowhere close to suggesting that his food was prepared or served under conditions that posed an immediate danger to his health. *See Johnson–El v. Schoemehl,* 878 F.2d 1043, 1054–55 (8th Cir.1989); *French v. Owens,* 777 F.2d 1250, 1255 (7th Cir. 1985).

■ Franklin next alleges that prison officials did not adequately supervise the prison cafeteria, where he was once attacked by another inmate. He has pleaded himself out of court, however, by elaborating that the officials' only transgression was a policy of locking prisoners in the cafeteria during meals, where fights sometimes occurred, and monitoring their behavior from outside. As the district court properly concluded, such a practice could at most be characterized as negligence, which alone does not support an Eighth Amendment violation. *See Washington v. LaPorte County Sheriff's Dep't,* 306 F.3d 515, 519 (7th Cir.2002); *see also Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

■ Regarding his access-to-the-courts claim, Franklin has similarly pleaded facts that demonstrate that it cannot succeed. He alleges that prison officials directed him to do his legal research by computer but refused to provide computer training, and that this kept him from successfully litigating his petition for habeas corpus in case no. 02–C–0278 in the United States District Court for the Western District of Wisconsin. The only legal injury he allegedly suffered was an inability to find and cite legal authority for his habeas corpus claims, but the district court's dismissal of that case (which is presently on appeal to this court as case number 03–1031) was not premised on any failing by Franklin to cite relevant legal authorities. Thus, he will be unable to demonstrate any actual injury flowing from the conduct alleged in the complaint, and his claim was properly dismissed. *See Tarpley v. Allen County, Indiana,* 312 F.3d 895, 899 (7th Cir.2002).

Franklin next claims that he was denied a shower the night before he had hand surgery, and, in a separate incident, that guards used excessive force against him during a rectal examination, specifically by striking his head against a metal door. These claims were appropriately dismissed for failure to exhaust administrative remedies. Although failure to exhaust administrative remedies is not ordinarily a question at the dismissal stage, Franklin has demonstrated through his various pleadings that he would fail to survive summary judgment on these claims. Regarding the excessive force claim, Franklin filed an inmate complaint protesting the rectal exam, but he concedes in his brief on appeal and reply brief that neither that complaint nor a report that it mentions discusses an excessive use of force. Regarding the shower claim, Franklin does not dispute that he failed to file a complaint within the required 14–day limit. *See Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir.2002).

■ The last of Franklin's claims dismissed early in the proceedings is his contention that he has a right to medical privacy that is violated when he is forced to discuss his medical information in the presence of other inmates and prison staff members. The Supreme Court has recog-

nized a constitutional right to information privacy under the Fourteenth Amendment, *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), though its contours continue to be refined, *see Denius v. Dunlap*, 209 F.3d 944, 956 (7th Cir. 2000). Prisoners, though, at best have very limited privacy rights, *see Anderson v. Romero*, 72 F.3d 518, 522 (7th Cir.1995), and we have not previously held in a published opinion that they enjoy a constitutional right to privacy in their medical information. *See id.* at 522–23; *Massey v. Helman*, 196 F.3d 727, 742 n. 8. *But see Woods v. White*, 689 F.Supp. 874 (W.D.Wis.1988), *aff'd without opinion*, 899 F.2d 17 (7th Cir.1990). Two circuits in recent years have recognized such a right, *see Doe v. Delie*, 257 F.3d 309, 317 (3d Cir.2001); *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir.1999), but in both instances the underlying facts involved the purposeful dissemination of intensely private medical information about the complaining inmates. *See Delie*, 257 F.3d at 311 (involving HIV-positive status); *Schriver*, 175 F.3d at 109 (involving HIV-positive status and transsexualism).

Prisoners cannot enjoy greater privacy protection than individuals in free society, *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir.2001), and some amount of sharing of medical information in areas where it might be overheard by other patients—*e.g.*, in hospital emergency rooms, school infirmaries, and the waiting room of a doctor's office—is commonplace (putting to one side the new precautions many medical providers have adopted pursuant to the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104–191, 110 Stat. 1936, familiarly known as HIPPA, and its implementing regulations, which Franklin has not invoked and on which we offer no comment). Franklin appears to complain of nothing more than this sort of general indiscretion, including the argument that treatment in front of staff members is offensive. Further, as the Second Circuit noted, "the interest in the privacy of medical information will vary with the condition." *Schriver*, 175 F.3d at 111. Franklin's complaint identifies the medical conditions at issue in this lawsuit as a cancerous finger sore, diabetes, the need for eyeglasses, and other fairly pedestrian maladies. Because the semi-public discussion of these ailments would not transgress the constitutional right to information privacy insofar as that right might extend to prisoners, we affirm the district court's dismissal and reserve for another day a fuller treatment of this question.

Next we consider the claims that were resolved at summary judgment. Three of them can be dealt with quickly because Franklin failed to adduce any supporting evidence in the face of significant opposing evidence. First, Franklin asserts that prison physician Dr. Paulino Belgado refused to prescribe him a 2,400 calorie diet after Franklin was diagnosed with diabetes.[1] Yet the record leaves no doubt that Belgado *did* prescribe such a diet, although it apparently never took effect. The evidence shows that after Belgado wrote the prescription his responsibility on the matter ended because the task of completing a "modified diet form" at WCI

---

1. Dr. Belgado died while this case was pending in the district court. Franklin appeals that court's refusal to grant him an extension of time to substitute Belgado's estate as a party (a move that was necessary so that his claim would not abate), claiming that he missed the deadline because prison employees obstructed his mail. Because we, like the district court, find no merit to Franklin's substantive claims against Belgado, any error in refusing to grant a time extension would be harmless, so we need not address this argument.

belongs to the nurse implementing a physician's orders, not the physician.

Second, Franklin claims that a defendant guard threatened to deny him insulin for his diabetes, but at summary judgment he offers no other evidence to support the point. The evidence in the record directly contradicts Franklin's version of events: the guard denied making the threat, and two inmates whom Franklin identified as witnesses recalled the encounter but denied hearing any threat. Even if such evidence existed, it would not matter, because an unfulfilled threat to deny medical care in these circumstances has no constitutional significance. *E.g., Gaut v. Sunn,* 810 F.2d 923, 925 (9th Cir.1987).

Third, Franklin claims that Dr. Pamela Bartels, the Health Services Administrator at WSPF, failed to treat him for diabetes between March and July 2001, but the undisputed evidence establishes that Franklin was first diagnosed with diabetes in October 2001, three months after he had been transferred out of WSPF and Bartels's care. Franklin argues that Bartels should have treated him beginning in March for high blood sugar, but no evidence supports his assertion that he or anyone else discovered his high blood sugar until after he left WSPF. *See Palmer v. Marion County,* 327 F.3d 588, 593 (7th Cir.2003).

■ A more substantial claim is that Belgado and defendants Holly Meier, Gary McCaughtry, and Jim Wegner were deliberately indifferent to Franklin's cancerous right index finger, which initially appeared to be a fungal infection but ultimately required partial amputation. Meier, a nurse at WCI, refused to treat Franklin's finger in April 1997, before he had been seen by a doctor, because Franklin had failed to make a $2.50 co-payment. Even though Franklin's finger ailment turned out to be quite serious, Meier believed at the time

that he had a mere fingernail infection. This belief was not so farfetched that it amounted to deliberate indifference, nor is a fingernail infection so obviously serious a condition that Meier's failure to treat it amounts to an Eighth Amendment violation. *Compare Cooper v. Casey,* 97 F.3d 914, 916 (7th Cir.1996) (minor aches and pains do not rise to the level of serious medical needs) *with Oxendine v. Kaplan,* 241 F.3d 1272, 1278 (10th Cir.2001) (finding a claim for deliberate indifference where delay in treating re-attached finger that had turned black from infection caused part of finger to fall off).

■ Belgado, the physician who treated Franklin's finger from December 1997 to May 1999, perhaps should have recognized sooner the true nature of Franklin's condition. Nevertheless, negligence or even gross negligence does not amount to deliberate indifference. *Perkins v. Lawson,* 312 F.3d 872, 875 (7th Cir.2002). By treating Franklin regularly between 1997 and 1999, Belgado demonstrated that he was not deliberately indifferent to Franklin's health. Further, Belgado caused Franklin no harm: the defendants' unchallenged expert stated that even if cancer had been diagnosed in 1995—two years before Franklin claims to have received insufficient attention—the treatment, partial amputation, would have been the same. Finally, although in hindsight Belgado's prescriptions for topical cream and triple-antibiotic ointment appear deficient, matters of medical judgment cannot serve as the basis of an Eighth Amendment claim. *See Snipes v. DeTella,* 95 F.3d 586, 591 (7th Cir.1996).

■ Even weaker with respect to Franklin's finger injury is his attempt to hold McCaughtry, the warden at WCI, and Wegner, a former Corrections Program Supervisor, responsible for the medical

treatment he received from Meier and Belgado. Even if there was evidence of deliberate indifference by the nurse and doctor, McCaughtry and Wegner could share liability only if they knew the injury was serious and yet condoned or turned a blind eye to the inadequate treatment. *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988). Franklin alleged in his complaint that he wrote to both McCaughtry and Wegner to inform them of, among other things, his fear that he was receiving insufficient medical care in retaliation for exercising his right to seek medical treatment in the first place. Neither recalled receiving such letters, and Franklin never produced copies. *See Vance v. Peters,* 97 F.3d 987, 994 (7th Cir.1996). Nevertheless, even assuming that Franklin did notify McCaughtry and Wegner, summary judgment was still appropriate. The news that what Franklin thought was a fingernail infection was not receiving sufficient attention would not have reasonably suggested to McCaughtry and Wegner an excessive risk to Franklin's safety. *Compare Reed v. McBride,* 178 F.3d 849, 854–56 (7th Cir.1999) (warden required to act where officials allegedly denied an inmate life-sustaining medication and food).

■ Franklin also contests the grant of summary judgment on his claim that Linda Hoddy–Tripp, a corrections supervisor, denied him eyeglasses for several months. Although Franklin's need for prescription glasses could conceivably constitute a serious medical need, *see Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir.1996), he failed to show that Hoddy–Tripp was deliberately indifferent to that need. After Franklin's glasses were taken from him in November 2000 because they were broken, Hoddy–Tripp was assigned to investigate his grievance and asked Dr. Bartels whether Franklin could function without the broken pair until new ones were obtained. After learning that Bartels was unsure of Franklin's vision needs, Hoddy–Tripp decided to retain the broken glasses because Franklin was already listed to see an optometrist. Staff eventually scheduled an appointment after Franklin repeatedly refused to make one himself, and the optometrist ordered new glasses in mid-February. Thus, far from disregarding Franklin's glasses situation, Hoddy–Tripp investigated his need for the confiscated glasses and encouraged him to speed the delivery of new ones, which he declined to do. *See Mitchell v. Maynard,* 80 F.3d 1433, 1444 (10th Cir. 1996).

■ Franklin's remaining medical-care claims are likewise unavailing. He quibbles with the denial of a special mattress for his lower-back pain during his time in segregation. Yet he failed to produce any evidence that his back problem—which one doctor characterized as "not visibly uncomfortable" or "overly bothersome"—constituted a serious medical need within the meaning of the Eighth Amendment. *See Gutierrez v. Peters,* 111 F.3d 1364, 1372 (7th Cir.1997) (rejecting the notion that every ache, pain, or discomfort creates an Eighth Amendment claim). He also did not offer evidence that the special mattress was anything more than a palliative for his increased comfort; health services staff concluded that it was not "medically necessary," given his condition.

■ Franklin also claims that while in segregation he was not permitted the athletic-style shoes that physicians at the University of Wisconsin had recommended that he wear for a foot condition (about which neither party supplied any evidence) that caused heel pain during walking or running. As with his mattress claim, Franklin did not demonstrate that his foot condition was a serious medical need for constitutional purposes. Following the university doctors' recommendation, prison

doctors prescribed the shoes, but by its terms that directive did not apply when Franklin was in segregation; the prescription authorized Franklin to wear the shoes only if they were allowed at his inmate level. In the absence of evidence that Franklin's condition caused him severe pain, the fact that doctors were not concerned enough about his feet to direct prison staff to give him the shoes while he was in segregation—where he necessarily had less occasion to walk from place to place—indicates that his objective need for the shoes was not of constitutional dimension. *See id.*

■ Moving to Franklin's final two claims, he first stated that he was denied out-of-cell recreation more than ten times, although he produced evidence of just two missed opportunities in a single month in 2001. A prison log of Franklin's recreational opportunities shows that he was consistently offered recreation around four times per week during the period in question. Missing two days did not amount to a constitutional violation. *See Delaney v. DeTella,* 256 F.3d 679, 683–84 (7th Cir. 2001); *Antonelli v. Sheahan,* 81 F.3d 1422, 1432 (7th Cir.1996).

■ That leaves only Franklin's claim about his mail. Franklin broadly alleged that three prison employees regularly opened, read, and photocopied his legal mail during his stay at WSPF, in violation of the First Amendment. But at the summary judgment stage he cited just two incidents. In 2000, he received a letter from Wisconsin state representative Sheldon Wasserman that had been opened, and in 2003 he received an opened letter from a law firm that had been mis-delivered to another inmate, who gave it back to a guard after realizing the mistake. Like the district court, we perceive no triable claims on these facts.

Inmates' mail enjoys some constitutional protection under the First Amendment, *Zimmerman v. Tribble,* 226 F.3d 568, 572 (7th Cir.2000), and correspondence from attorneys to inmates, while of course not absolutely privileged, *see Gaines v. Lane,* 790 F.2d 1299, 1305–06 (7th Cir.1986), is treated especially carefully. *See Wolff v. McDonnell,* 418 U.S. 539, 575–76, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Even if Franklin were correct in arguing that *Martin v. Brewer,* 830 F.2d 76 (7th Cir. 1987), extends that special protection to personalized mail from public officials to inmates, his First Amendment claim still must fail as a matter of law. We have emphasized the significance of *repeated* infractions by prison mailroom workers, particularly when those actions indicate a policy or practice of mishandling inmates' mail. *See Castillo v. Cook County Mail Room Dep't,* 990 F.2d 304, 306 (7th Cir. 1993) (reversing dismissal because violations indicated ongoing activity); *see also Zimmerman,* 226 F.3d at 572–73 (upholding dismissal where appellant alleged only one incident of untimely delivered non-legal mail). Here, we see only one instance where named defendants opened Franklin's mail—"legal" or not—as well as an unrelated mis-delivery of another missive three years later that was promptly corrected. No rational trier of fact could find that these isolated incidents, spread over the six-year time-span of this litigation, violated any constitutional right.

We conclude that the district court properly resolved all of the claims in Franklin's complaint. We have also examined the remaining arguments in his brief and find no merit to any of them. Accordingly, the judgment of the district court is

AFFIRMED.