In the

# United States Court of Appeals
## For the Seventh Circuit
————————

No. 07-1156

ELIZABETH DELARAMA,

*Plaintiff-Appellant*,

*v.*

ILLINOIS DEPARTMENT OF HUMAN SERVICES, and
MARY ZUKOWSKI, individually and in her official capacity,

*Defendants-Appellees.*

————————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 05 CV 5163—**Milton I. Shadur**, *Judge.*

————————

ARGUED MAY 5, 2008—DECIDED SEPTEMBER 2, 2008

————————

Before CUDAHY, POSNER and ROVNER, *Circuit Judges*.

CUDAHY, *Circuit Judge.* Elizabeth de la Rama[1] brought this lawsuit against her employer alleging discrimination

————————

[1] The district court observed that the parties' filings were inconsistent in their spelling of the plaintiff's name. Noting that the plaintiff signs her name "de la Rama," the court conformed its opinion to this spelling. Like the district court, we defer to the plaintiff's spelling of her name.

in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, interference with her rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.* and common law defamation. The district court granted the defendants' motion for summary judgment and de la Rama appeals. We affirm.

## I. Background

De la Rama is a Filipino-American who is employed as a registered nurse at Chicago-Read Mental Health Center (Chicago-Read), a residential facility for mentally ill adults that is run by the Illinois Department of Human Services (the Department). From January 2004 to January 2005, Mary Zukowski was de la Rama's supervisor. Pursuant to Chicago-Read's leave policy, de la Rama received 12 sick days per year, which accrued at a rate of one sick day per month. De la Rama called in sick from July 19, 2004 through August 19, 2004. Although she was diagnosed with fibromyalgia in early August, she did not convey this information to her employer until much later. Instead, de la Rama sporadically submitted notes from physicians stating that she was ill. For example, on July 21, 2004, de la Rama called in sick but showed up at Chicago-Read that afternoon during a coworker's retirement party. At the party she attempted to give Zukowski a doctor's note explaining that she was suffering from back pain and was unable to return to work for one week. Zukowski told her that they should discuss the matter later. When de la Rama could not find Zukowski after the party, she left the note with a coworker.

Although de la Rama had exhausted her sick leave by this point, she continued to call in sick without explaining the nature of her illness.

On July 27, 2004, de la Rama provided her employer with a doctor's note stating that she was under medical care and could not return to work until August 10, 2004. The next day she spoke with a Human Resources Specialist who told her that in order to request medical leave, she needed to submit a written request and a completed "CMS 95" form. De la Rama did not submit a written request or a CMS 95 form and did not return to work on August 10. She had no further contact with Chicago-Read until August 19, when the Associate Director of Nursing called her to discuss her absence. On August 20, she submitted three more doctor's notes, one of which stated that she could return to work on August 23. She also submitted a note stating that she was requesting medical leave beginning on July 16, 2004 until an unknown date. The notes did not state her condition nor describe its severity. De la Rama did not return to work on August 23.

On October 4, 2004, de la Rama submitted a completed CMS 95 form, which explained that she suffered from fibromyalgia and a herniated disk. Chicago-Read retroactively granted her leave to the date of her last sick day, September 2, 2004. De la Rama returned to work on January 3, 2005. At de la Rama's request, she was assigned to a different unit under a new supervisor upon her return.

While de la Rama was absent from work in July and August, the work days she missed were treated as unau-

thorized absences (UAs). She accrued a total of 24 UAs. After de la Rama returned to work in 2005, she, her union representative and her new supervisor attended a pre-disciplinary meeting regarding these UAs. The parties decided that de la Rama would not be disciplined for the UAs but that future UAs would trigger a disciplinary proceeding against her. De la Rama pursued a grievance in order to remove the UAs from her employment record. At the third-level grievance hearing, management and de la Rama's union representatives agreed that the absences would remain on her record but would never be used in any disciplinary proceedings against her.

On September 9, 2005, after receiving a right to sue letter from the Equal Employment Opportunity Commission, de la Rama filed this lawsuit alleging that the Department had discriminated against her because of her race and national origin. In addition, de la Rama complained that the Department violated the FMLA by refusing to allow her to take leave for a serious medical condition. She also brought a common law defamation claim against Zukowski, alleging that Zukowski falsely claimed that de la Rama's absences were unauthorized and that Zukowski made false statements about her during the third-level grievance hearing. On January 5, 2007, the district court granted summary judgment for the defendants. This timely appeal followed.[2]

---

[2] In addition to the claims at issue in this appeal, de la Rama brought claims under 42 U.S.C. §§ 1981 and 1983 against

(continued...)

## II. Discussion

We review a grant of summary judgment de novo, "viewing all facts and the reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). Summary judgment is appropriate only "where 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(c)). A nonmoving party cannot defeat a motion for summary judgment with bare allegations. *Smith v. Potter*, 445 F.3d 1000, 1006 (7th Cir. 2006); *see also Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005) (to defeat summary judgment, nonmoving party must adduce more than "a scintilla of evidence" in support of its claim). Rather, a party opposing summary judgment must present "evidence on which the jury could reasonably find for the nonmoving party." *Rozskowiak*, 415 F.3d at 612.

### A. Employment discrimination claim

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee

---

[2] (...continued)

Zukowski and a claim under the Americans with Disabilities Act (ADA) against the Department. The district court dismissed her § 1981 and § 1983 claims and disposed of her ADA claim on summary judgment. De la Rama does not appeal the district court's disposition of these claims.

"with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "A plaintiff may prove intentional employment discrimination under Title VII by using either the 'direct method' or 'indirect method.'" *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004).[3] Both methods require the plaintiff to show that she suffered a materially adverse employment action. *Id*. The district court concluded that de la Rama did not suffer any cognizable adverse employment action and thus, that she could not proceed on her discrimination claim under either the direct or indirect method of proof. On appeal, she disputes this finding, arguing that the recording and preservation of 24 UAs on her record constitutes a materially adverse employment action. We disagree.

---

[3] A plaintiff who proceeds under the direct method of proof must adduce direct or circumstantial evidence that shows that her employer's decision to take an adverse employment action against her was motivated by a discriminatory purpose. *Rhodes*, 359 F.3d at 504. Under the indirect method, a plaintiff must establish a prima facie case of discrimination by showing that she is a member of a protected class, that she was performing her job satisfactorily, that she suffered an adverse employment action and that she was treated less favorably than similarly situated individuals. *Id*. "If the plaintiff establishes a prima facie case, the employer must articulate a legitimate, non-discriminatory reason for its employment action, and in response the plaintiff must prove that the employer's proffered non-discriminatory reason is a pretext for discrimination." *Id*.

We have explained that in order to be actionable, "adverse actions must be materially adverse . . . meaning more than a 'mere inconvenience or an alteration of job responsibilities.'" *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 (7th Cir. 2001) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). "[A] 'materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Id.* at 612-13 (citation omitted). An employee's unhappiness with her employer's conduct or decision is insufficient to support a claim under Title VII. *See Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002). Rather, "[a]t minimum, the employee must be able to show a quantitative or qualitative change in the terms or conditions of employment." *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003). Thus, we have concluded that negative performance evaluations, standing alone, are not cognizable adverse employment actions. *See, e.g.*, *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 739 (7th Cir. 2006); *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 862 (7th Cir. 2005); *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 731 (7th Cir. 2004); *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996). Similarly, in *Ribando v. United Airlines, Inc.*, 200 F.3d 507 (7th Cir. 1999), we held that a "letter of concern" that was placed in the plaintiff's personnel file after she was investigated for allegedly making a harassing sexual comment did not constitute a materially adverse employment action. *Id.* at 511.

We discern no reason to treat the UAs in this case differently than we have treated negative performance evaluations or the inclusion of a letter of concern in an employee's personnel file. Although we have defined the term "adverse action" broadly and have emphasized the importance of considering the facts of each case in assessing whether an adverse action is material, *see Bryson v. Chi. State Univ.*, 96 F.3d 912, 916 (7th Cir. 1996), the undisputed facts of this case persuade us that the UAs do not in and of themselves constitute a materially adverse action. Pursuant to the agreement reached by de la Rama and her employer at the third-level grievance hearing, the UAs on her record do not have any effect on the terms or conditions of her employment. De la Rama attempts to rely on *Russell v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 243 F.3d 336 (7th Cir. 2001), to support her contention that the UAs constitute a materially adverse action. But in *Russell*, we concluded that a five-day disciplinary suspension was materially adverse because Russell lost five days of pay and her once-spotless record "now includes a formal finding that she 'falsified' her time records and committed 'theft of services.'" *Id*. at 341. The disciplinary action in *Russell* visited tangible consequences on the plaintiff, an important fact that distinguishes that case from the present one. In this case, de la Rama has not alleged any material change in the conditions of her employment—she was not fired or demoted, she suffered no financial consequences and her responsibilities have not changed. Because de la Rama has not alleged that any tangible consequences resulted from the UAs, *Lucas*, 367 F.3d at 731, we affirm the district court's con-

clusion that she did not suffer a materially adverse employment action and its entry of summary judgment for the defendants on her discrimination claim.

B. FMLA claim

The FMLA entitles eligible employees to up to twelve weeks of leave during any twelve-month period if the employee is unable to perform the functions of her position on account of a serious health condition. *See Harrell v. U.S. Postal Serv.*, 445 F.3d 913, 919 (7th Cir. 2006) (citing 29 U.S.C. § 2612(a)(1)). It also prohibits an employer from interfering with an employee's attempt to exercise her right to medical leave. *Burnett*, 472 F.3d at 477. In order to prevail on her FMLA interference claim, de la Rama was required to show the following:

> (1) [s]he was eligible for the FMLA's protections, (2) [her] employer was covered by the FMLA, (3) [s]he was entitled to leave under the FMLA, (4) [s]he provided sufficient notice of [her] intent to take leave, and (5) [her] employer denied [her] FMLA benefits to which [s]he was entitled.

*Id*. The district court concluded that de la Rama failed to provide sufficient notice of her intent to take FMLA leave. We agree. Although an employee is not required to refer to the FMLA in order to give notice of her intent to take FMLA leave, "the notice must succeed in alerting the employer to the seriousness of the health condition." *Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 725 (7th Cir. 2007). Calling in sick without providing additional information

does not provide sufficient notice under the FMLA. *Burnett*, 472 F.3d at 479; *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001) ("'Sick' does not imply 'a serious health condition.'"). This is true even if the employee provides her employer with a doctor's note if the note does not convey the seriousness of her medical condition. *See Phillips v. Quebecor World RAI, Inc.*, 450 F.3d 308, 311-12 (7th Cir. 2006). As the district court noted, during the period when de la Rama called in sick in July and August, she never indicated that she suffered from a condition that would require an extended period of leave. The FMLA's notice burden is not onerous but neither is it illusory. De la Rama did not provide documentation of her fibromyalgia until October 4, 2004. Until that point, de la Rama informed her employer only that she was sick, which is insufficient to suggest that she suffered from an FMLA-qualifying condition.

We have recognized that in some situations, "an employee may be excused from expressing a need for medical leave," such as "when circumstances provide the employer with sufficient notice of the need for medical leave." *Burnett*, 472 F.3d at 479; *see also Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003) ("dramatic change in behavior" may provide notice of a serious medical problem). De la Rama contends that the circumstances surrounding her absences should have put the Department on notice that she needed to take leave on account of a serious medical condition. In support of this argument, she cites an incident that occurred in May or June 2004 in which she was taken from work to the emergency room. Based on this incident, she contends that when she

began calling in sick to work in July, her employer should have known that she was suffering from an FMLA-qualifying condition. This argument does not wash. The FMLA does not require employers to play Sherlock Holmes, scanning an employee's work history for clues as to the undisclosed, true reason for an employee's absence. There is simply nothing in the record to suggest the kind of "dramatic, observable change in [de la Rama's] work performance or physical condition" that would excuse her from failing to notify the Department of her need for FMLA leave. *Burnett*, 472 F.3d at 480.

Further, in light of the fact that de la Rama was permitted to take seventeen weeks of leave—five weeks more than the twelve weeks the Department was required to give her under the FMLA—we find it difficult to see how the Department interfered with her entitlement to leave at all. In fact, at oral argument her attorney stated that de la Rama was not attempting to take FMLA leave when she called in sick in July and August. This puzzling concession further obscures the basis for de la Rama's FMLA interference claim since it is undisputed that the Department granted her FMLA leave after she submitted her written request in October. In any event, because de la Rama received FMLA leave after providing notice in October 2004, and because she did not provide adequate notice prior to that date, we affirm the court's grant of summary judgment on this claim.

C.  Defamation claim

Before the district court, de la Rama alleged that Zukowski defamed her on two occasions. First, during

July and August 2004, when Zukowski allegedly made unfavorable statements about de la Rama's absences to some of her co-workers. The district court concluded that Illinois' one-year statute of limitations for defamation barred the claim based on these statements since de la Rama filed her lawsuit in September 2005. The second incident of defamation supposedly occurred during the third-level grievance hearing, when Zukowski told "false stories" about de la Rama's behavior while she was enjoying the unauthorized absences and characterized de la Rama's doctors' notes as deficient. The district court concluded that the statements "concerned only de la Rama's failure to navigate through the proper procedures and paperwork that would entitle her to extended time off," and thus, "[did] not fall into any of the categories of defamation per se" under Illinois law. De la Rama's appeal of the court's grant of summary judgment on her defamation claim is conclusory and utterly lacking in any citation to the applicable law or to facts in the record. Thus, she has waived this issue. *See Beamon*, 411 F.3d at 862 ("[U]nsupported and undeveloped arguments are waived.").

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.