NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 13, 2011[*]
Decided April 13, 2011

*Before*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 10-1955

| | |
|---|---|
| ALLEN L. MOORE,<br>    *Plaintiff-Appellant,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 06 C 6088 |
| THOMAS MONAHAN, et al.,<br>    *Defendants-Appellees.* | Amy J. St. Eve,<br>*Judge*. |

**O R D E R**

The Illinois Department of Human Services ("DHS") detained Allen Moore for five months at a treatment facility in Joliet, Illinois, for sexually violent persons. In this civil-rights suit, he alleges that during this time DHS staff were deliberately indifferent to his safety, subjected him to unconstitutional conditions of confinement, deprived him of property without due process, and used excessive force to remove him from his cell. The

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

district court dismissed most of the claims at the pleadings stage and later granted summary judgment against Moore on several others. Two claims were tried before a jury and decided in favor of the defendants. Moore now appeals, but finding no errors, we affirm.

Moore arrived at the Joliet treatment facility after he was convicted of attempted sexual assault and residential burglary in 2000 and sentenced to 11 years' imprisonment. He was scheduled for supervised release in July 2005, but the Illinois Attorney General petitioned to have him committed under the Sexually Violent Persons Act. 725 ILL. COMP. STAT. 207/1-99. After a preliminary hearing, Moore was transferred to Joliet pending a commitment proceeding. During Moore's five-month stay at Joliet, he was housed in an old wing that he maintains is prone to extreme temperatures, contaminated water, and pest infestation. Administrators assigned him to that wing, he says, in accordance with their policy of penalizing inmates who refuse to participate in sex-offender treatment. Late in his stay Moore was ordered to move into a cell with another detainee. Moore objected, explaining that the cell's occupant outweighed him by 80 pounds and that "he knew that they could not get along." Moore alleges that when he refused to move, DHS staff beat him and dragged him from his cell. He also alleges that, in accordance with facility policy, they moved his property to the new cell; because he did not accompany them, they left the property unsupervised, and consequently family photographs and several legal documents related to his commitment proceeding were lost in the process.

As relevant here, Moore's lawsuit can be organized into six claims: DHS staff (1) violated his constitutional rights by assigning him to a shared cell over his objections; (2) used excessive force in removing him from his cell; (3) failed to protect him from another detainee; (4) deprived him of property without due process when his belongings in his new cell went missing and, because some of the lost property related to his commitment proceedings, denied him access to the courts; (5) denied him humane conditions of confinement by housing him in a wing of the facility given to extreme temperatures, contaminated water, and pest infestation; and (6) violated his right to due process by using cell assignments to punish pretrial detainees who refuse sex-offender treatment. (Moore also brought a claim for denial of medical care, but he has abandoned that on appeal).

The litigation on these claims proceeded in three stages. First, the district court dismissed most of Moore's claims at the pleading stage but allowed him to proceed to discovery on his claim of excessive force in removing him from his cell. The district court also allowed Moore to advance on part of his conditions claim: that extreme temperatures and pest infestation in the old wing amounted to unconstitutional conditions of confinement. Second, following discovery the district court entered summary judgment in favor of all defendants on his conditions-of-confinement claim and, for two defendants

only, on Moore's excessive-force claim. Third, after a three-day trial against the remaining defendants on the claim for excessive force, a jury found that the remaining defendants, five in all, had not used or condoned excessive force in extracting Moore from his cell.

On appeal, Moore first contends that the district court erred in dismissing two of his claims arising from his cell reassignment: the failure to protect him from another inmate and his objection to the order that he double-cell with the larger inmate.  Neither claim merits much discussion because Moore never alleged that he ever actually celled with the objectionable detainee. More specifically, the failure-to-protect claim fails because the threat allegedly disregarded never came to pass. *See Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). And his fear of harm by itself is not enough to support a constitutional claim. *See Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999); *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996). As for the double-celling claim, the Supreme Court has rejected the contention that housing two pretrial detainees in one cell amounts to unconstitutional punishment, *Bell v. Wolfish*, 441 U.S. 520, 541 (1979), a ruling that also applies in the context of civil detention, *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003).

Moore next contends that he stated a claim that he lost property without due process when defendants moved his belongings to his newly assigned cell and left them unsupervised, following a policy of relocating the property of residents who refuse orders to transfer cells. Relying on the Supreme Court's decision in *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), the district court dismissed the claim on the ground that Illinois had provided Moore with an "adequate post-deprivation remedy" for the missing property. Moore tries to circumvent *Parratt* by arguing that a postdeprivation remedy will not preclude liability if an official policy causes the loss, *see Parratt*, 451 U.S. at 542-43; in this case, Moore alleges, the policy of relocating the property of recalcitrant residents caused his loss. But Moore cannot avoid *Parratt* so easily because the policy he describes requires only the relocation of property to the new cell; it does not require that the property go unsupervised. The loss occurred here because Moore refused to accompany the officers and his property to his new cell, even though the Constitution does not give inmates the right to veto a cell assignment, *Riccardo v. Rausch*, 375 F.3d 521, 528 (7th Cir. 2004). Moore, not the defendants, therefore bears responsibility for the consequences of leaving his property unattended.

Relatedly, the district court correctly concluded that Moore's allegations about missing property did not support a claim that he was denied access to the courts. Moore says he lost several documents "regarding his conviction" that he intended to use during his civil-commitment proceeding. Even if the documents are irretrievably lost, his claim still fails because Moore did not allege that without the documents he cannot prevail at the hearing. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Moreover, Moore tells us that he

has representation at his civil-commitment hearing; if so, his counsel should be able to access duplicates, which are stored for the public record, 20 ILL. COMP. STAT. § 2635/5, thereby undercutting any risk of harm from the loss. *See Entzi v. Redmann*, 485 F.3d 998, 1005 (8th Cir. 2007); *Walters v. Edgar*, 163 F.3d 430, 436 (7th Cir. 1998).

Moore next contends that the district court's rulings on his conditions-of-confinement claims warrant reversal. He raised two separate challenges to the conditions at the Joliet facility, one about water quality (dismissed on the pleadings), another concerning pests and extreme temperatures (which went to summary judgment). We agree with the defendants that on appeal Moore forfeited this latter challenge by merely repeating the allegations in the complaint without challenging the basis in the evidentiary record for the order of summary judgment. *See De La Rama v. Ill. Dep't of Human Servs.*, 541 F.3d 681, 688 (7th Cir. 2008).

Moore's claim that the facility's water quality fell below constitutional standards was also properly dismissed. Moore alleged in his complaint that administrators willfully exposed residents at the Joliet facility to water that "was foul . . . contained pollutants [and] was potentially dangerous to drink." But a 2005 report from the state EPA, which Moore furnished as a pleadings exhibit and which he does not impugn, concludes that the water at the Joliet facility was safe and not susceptible to contamination. Read in light of this exhibit, which we may do, *see Hous. Auth. Risk Retention Grp. v. Chi. Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004), Moore's complaint fails as a matter of law. The Constitution requires the state to provide an environment safe from excessive health hazards, not one free of minor contaminants. *Carroll v. DeTella*, 255 F.3d 470, 472-73 (7th Cir. 2001). Because this condition survived regulatory scrutiny, it cannot plausibly serve as the basis for a constitutional claim. *Id*.

Having concluded that the conditions in the old wing met constitutional standards, we can make short order of Moore's related claim that the defendants unconstitutionally assigned him to a portion of the facility to penalize him for refusing to consent to sex-offender treatment. The penological goal that motivated the transfer is irrelevant so long as the defendants did not confine him in a location that fell below standards typical of incarceration. *See Sandin v. Connor*, 515 U.S. 472, 485-86 (1995); *Miller v. Dobier*, No. 10-1829, 2011 WL 477046, at *2-3 (7th Cir. Feb. 11, 2011). When the living conditions are constitutionally acceptable, as we have already decided the record here shows, prison officials enjoy wide discretion to move inmates around to accomplish their penological objectives. *Allison*, 332 F.3d at 1078-79.

Finally, we can quickly dispose of the arguments Moore makes about the one claim of his that went to trial, his excessive-force claim. Under Federal Rule of Appellate

Procedure 10(b)(2), a party who seeks to challenge a finding or conclusion on appeal must submit a transcript of any evidence relevant to that finding or conclusion. Because Moore failed to order a trial transcript, we treat his arguments as forfeited. *See RK Co. v. See*, 622 F.3d 846, 853 (7th Cir. 2010); *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 731 n.10 (7th Cir. 2003); *LaFollette v. Savage*, 63 F.3d 540, 544 (7th Cir. 1995). Furthermore, we decline to exercise our authority under Federal Rule of Appellate Procedure 10(e) to order Moore to supplement the record with the trial transcript. Moore has failed to secure a transcript despite ample time, a right to a free transcript under 28 U.S.C. § 753(f), and notice that a transcript would be critical for meaningful appellate review.

AFFIRMED.